**In the Interest of M.A.C., a child.**

No. 09–00–181 CV.

Court of Appeals of Texas, Beaumont.

Submitted April 5, 2001.

Decided July 26, 2001.

■■■■■■■■

Michelle Finger Cantoni, Garcia & Garcia, P.C., Conroe, for appellant.

Frank H. Bass, Jr., County Atty., William L. Pattillo, III, Asst. County Atty., Conroe, for appellee.

Before WALKER, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

BURGESS, Judge.

Hope Cumpian appeals from a judgment terminating her parent-child relationship with M.A.C. The Texas Department of Protective and Regulatory Services initiated the suit while M.A.C. was a newborn, because M.A.C. tested positive for cocaine at birth. As the appointed temporary sole managing conservator of M.A.C., the Department maintained custody of the child throughout this litigation. We shall address Cumpian's three points of error in reverse order.

■ Point of error three contends, "The trial court committed reversible error when it failed to allow a no-cost physical examination of the child by a medical expert of the appellant's choosing." Cumpian filed a motion to permit Dr. Marie Ferris, a board certified pediatrician, to examine M.A.C., for the purpose of assessing the existence and severity of the infant's alleged fetal alcohol syndrome or fetal cocaine syndrome. Cumpian asked that Dr. Ferris be treated as her consulting expert. *See* TEX.R. CIV. P. 192.3(e).

■ The Department argues the motion was not presented to the trial court in a timely manner because it was filed within thirty days of the date set for trial. *See* TEX.R. CIV. P. 190.3(b)(1)(A). The motion was filed the first time in December, some two months before the case actually went to trial. The trial court denied the motion but advised Cumpian that he would reconsider his ruling if the need for an expert became apparent during trial. Cumpian re-urged her motion after the trial was reset at the Department's request. A trial resetting has the effect of nullifying the discovery deadline. *J.G. v. Murray,* 915 S.W.2d 548, 550 (Tex.App.—Corpus Christi 1995, orig. proceeding). Thus, the motion was not untimely under Rule 190.3(b)(1)(A).

■ Good cause for a physical examination is established where the petitioner intends to use expert medical testimony to prove a fact in controversy. *See Laub v. Millard,* 925 S.W.2d 363, 364 (Tex.App.—Houston [1st Dist.] 1996, orig. proceeding). During the hearing on the motion, the Department notified the trial court that it would present expert witnesses at trial. Cumpian's attorney apprised the court that she needed the assistance of an expert because she did not understand the medical records. Cumpian's attorney also informed the trial court that Dr. Ferris would not provide her expert opinion of M.A.C.'s condition based only upon a review of the medical records because actual examination of the child was required before she could make a diagnosis. By forbidding the examination, the court placed such a severe restriction on the Cumpian's ability to discover facts to contradict the opinions of the Department's expert witnesses that she was deprived of a champion in the "battle of experts." *See Sherwood Lane Associates v. O'Neill,* 782

S.W.2d 942, 945 (Tex.App.—Houston [1st Dist.] 1990, orig. proceeding).

The importance of a medical expert was borne out at trial. The Department based its "best interest" allegation almost exclusively upon M.A.C.'s current physical condition and prognosis. According to the Department's representative, Kathy Huie, the main factor in the Department's decision to seek termination of Cumpian's parental rights was the existence of M.A.C.'s physical ailments, esophageal reflux and developmental delay. Huie admitted Cumpian had made substantial progress in her life by getting off drugs and maintaining a job, but in Huie's opinion Cumpian could not meet M.A.C.'s special needs.

In order to meet its burden of proof at trial, the Department offered M.A.C.'s voluminous medical records, which Cumpian's counsel had admitted she could not adequately understand without expert assistance. The Department presented expert testimony from M.A.C.'s treating pediatrician, a neonatologist, an occupational therapist, and a speech pathologist. The pediatrician, Dr. Richard Calvin, diagnosed M.A.C.'s syndromes by patient history and testified that M.A.C. had both delayed communication skills and a significant feeding disorder. According to Dr. Calvin, M.A.C.'s special needs require a custodian who understands his diagnosis and treatment.

The Department argues that its witnesses were independent medical providers. We disagree. Although he was also the child's treating physician, Dr. Calvin clearly testified as an expert on behalf of the Department. The trial court abused its discretion by denying Cumpian's motion to permit her own expert to examine M.A.C. As M.A.C.'s physical condition formed the basis of the Department's allegation that termination would be in the child's best interest, the error probably resulted in the rendition of an improper judgment. Tex.R.App. P. 44.1(a)(1). Point of error three is sustained. We decline to rule upon points of error one and two, as they would not result in greater relief to the appellant. The judgment is reversed. We remand the cause to the trial court for a new trial.

REVERSED AND REMANDED.

GAULTNEY, Justice, dissenting.

Respectfully, I dissent. The motion for an examination must be placed in context in considering whether the trial judge abused his discretion in denying the exam. First I will address this context of background facts; then I will explain the reasons I dissent.[1]

BACKGROUND

A court may order termination of a parent-child relationship if the court finds by clear and convincing evidence[2] that the parent has committed one of the acts set forth in Tex. Fam.Code Ann. § 161.001(1) (Vernon Supp.2001), and that termination is in the best interest of the child. *See In re King*, 15 S.W.3d 272, 274 (Tex.App.—Texarkana 2000, pet. denied).

Section 161.001(1): In its order terminating Cumpian's parental rights, the trial

---

1. Given the majority's disposition of this case, I need not address appellant's attack on the lack of proof of the *Robinson* factors concerning the testimony of the two treating physicians and the psychologist. On remand, the trial court will certainly address these factors with respect to all experts on both sides.

2. The clear and convincing standard requires more proof than the "preponderance of the evidence" standard in civil cases, but less than the "beyond reasonable doubt" standard of criminal cases. *In re K.C.M.*, 4 S.W.3d 392, 395 (Tex.App.—Houston [1st Dist.] 1999, pet. denied).

court found that the mother had committed not just one, but three of the acts set forth in Section 161.001(1), as follows:

knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;

engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;

been the cause of the child being born addicted to alcohol or a controlled substance, other than a controlled substance legally obtained by prescription, as defined by § 261.001(7), Tex. Fam.Code.

These trial court's findings are not attacked on appeal; we must accept them as true. Furthermore, clear and convincing evidence supports the findings.

It is beyond dispute that the mother knew she was placing her child in danger when she took cocaine during the pregnancy. Cumpian admits this fact. She also testified she had a prior pregnancy with a female child who tested positive for cocaine at birth. There is evidence in the record that M.A.C. was born with cocaine in his system and that Cumpian took cocaine shortly before his birth; Cumpian testified she used cocaine during the pregnancy with M.A.C. even though in 1991 she had given birth to her daughter under the same circumstances. Here, it is beyond dispute that the mother was "the cause of [M.A.C.] being born addicted to [cocaine] . . ., as defined by Section 261.001." [3]

The Best Interest of the Child: After a trial in which fourteen witnesses testified and extensive evidence was reviewed, the trial court concluded that termination of the parent-child relationship was in the best interest of the child. The trial court's conclusion is supported by clear and convincing evidence. The twenty-nine year old mother began using cocaine and alcohol when she was thirteen or fourteen years old. As a juvenile she was in and out of two or three drug rehabilitation programs. In 1991, she gave birth to a female child born with cocaine in her system, who was afflicted with problems and was removed from her care. After the daughter's birth, Cumpian was in an eleven-day detoxification program. Subsequently, she was convicted of auto theft and spent approximately six years in prison. Upon leaving prison, she continued to use cocaine and alcohol and ultimately was charged and convicted of public intoxication. Later she had a return trip to jail during which time she discovered she was pregnant with M.A.C., the child involved in this proceeding. It was on February 4, 1999, that Cumpian gave birth to M.A.C., the second child born to her with cocaine in his system.

The trial court heard evidence that, on the advice of her attorney, Cumpian refused to release drug treatment records to her caseworker and that the only assurance the court had that she had not "done any drugs" since beginning her treatment was her own testimony. The court did not have any type of blood test or urinalysis showing that she had not been using drugs recently; all he had was her uncorroborated testimony that the most recent test-

---

3. *See* TEX. FAM.CODE ANN. § 161.001(1)(R)(Vernon Supp.2001); TEX. FAM.CODE ANN. § 261.001(8)(Vernon Supp.2001).

Section 261.001(8), in pertinent part, defines "born addicted" as a child:
(A) who is born to a mother who during the pregnancy used [cocaine] . . .; and

(B) who, after birth as a result of the mother's use of [cocaine] : . . :
. . . .
(iii) Exhibits the demonstrable presence of [cocaine] in the child's bodily fluids.

ing was September 1999, more than four months prior to the trial. Although, on the instructions of her attorney, the Department was not permitted to ascertain whether Cumpian was currently involved in a drug program, the trial court did hear testimony that the mother had stated at one point a desire to use drugs again. The court also heard testimony that Cumpian could not afford to return to her hometown because of her extensive drug contacts.

There is evidence in the record from which the trial court could have concluded that Cumpian's family would be able to offer little, if any, assistance. Although Cumpian claimed her family would support her financially while she stayed home and took care of M.A.C ., she acknowledged they had not supported her in the past because of her drug usage. In addition, the court heard testimony that her sister had asked Cumpian to help raise money for their brother who was in prison. All three of Cumpian's siblings had extensive drug histories, and the grandmother of the child was described by her daughters as having been abusive. Two of the children of one of Cumpian's sisters were not with their mother, because they had been placed with relatives.

Cumpian testified, to her credit, she has attended drug rehabilitation classes, completed a parenting class, obtained and maintained an apartment, completed her G.E.D., and obtained employment as a street cleaner with the City of Houston. But her personal progress is not the trial court's primary concern here; in focusing on the child's best interest the court must consider the child's condition, his needs, and circumstances, and how they are to be met and managed in the face of the mother's indisputably uncertain and precarious circumstances. Though there are programs designed to assist Cumpian in the care of the child, those programs do not provide assistance twenty-four hours a day; that fact, coupled with the evidence regarding her history of instability, her family's instability and her lack of other support in her home community, is troubling evidence of her inability to adequately meet the child's significant needs.

M.A.C. is now in a loving and stable environment with foster parents, who attend to his special needs. Those special needs[4] were vividly described by the child's occupational therapist, his speech pathologist, the guardian ad litem, and the foster mother. Even Cumpian herself testified that she is "more than positive that there is some problems with him." The record reveals that, because of Cumpian's circumstances and M.A.C.'s special needs, Cumpian is not able to adequately care for his physical needs; the evidence shows the foster parents, who have indicated their willingness to adopt him, are not only willing and able to care for him, but, in fact, have done so since the child was released from the hospital in March 1999.

## THE REQUESTED EXAM

Cumpian filed a motion to permit Dr. Marie Ferris, a board certified pediatrician, to examine M.A.C., for the purpose of

---

4. M.A.C. has difficulty taking in sufficient amounts of food because his tongue does not work properly. The condition requires repeated exercises involving oral stimulation and manipulation of his mouth and tongue at various times during the day. He can only take in approximately two ounces of food at a time and has to have repeated feedings throughout the day and night. M.A.C. has an extreme reflux condition, which causes him to regurgitate his food through his mouth and nose. This, in turn, exacerbates the skin condition called eczema. He is on numerous medications. At the time of trial, he had almost no language skills. The speech pathologist indicated M.A.C. needed long-term therapeutic intervention—with the care-giver providing much of the home-care therapy.

assessing the "existence or severity" of the infant's alleged fetal alcohol syndrome or fetal cocaine syndrome. Cumpian asked that the physician appointed by the court be treated as her consulting expert and that any reports generated as a result of such evaluation be tendered directly to her counsel. Under Tex.R. Civ. P. 192.3(e), a party is not required to disclose the mental impressions and opinions of consulting experts. The significance of Cumpian's request was that the consulting expert's opinion or report would be confidential and she would not be required to produce it to the Department. *See In re City of Georgetown*, No.00–0453, 2001 WL 123933, at *6 (Tex. Feb.15, 2001) ("The rules of procedure make it abundantly clear that information about consulting experts is confidential.").

Rule 204.1 provides that, on motion, a party may obtain an order compelling another party to produce for an examination a person who is in the other party's custody, conservatorship, or legal control for a physical or mental examination. Tex.R. Civ. P. 204.1(a)(2). The Rule provides that the court may issue the order only (1) for good cause shown and only (2) if the person's physical or mental condition is at issue. Upon request for a report, the party obtaining the examination must deliver a copy to the requesting party.[5] As appellant's motion for the exam of the child presented a procedure contrary to that required by Rule 204, the trial court had broad discretion to reject the motion. An appellate court should not reverse a trial court's exercise of that broad discre-tion without proof that he acted arbitrarily or without reason.

The requirement of good cause for a compulsory physical examination is satisfied by proof of three elements. *See Coates v. Whittington*, 758 S.W.2d 749, 753 (Tex.1988)(orig.proceeding) (Movant sought compulsory mental examination of plaintiff under former Tex.R. Civ. P. 167a, which, like the current Rule 204.1, encompassed both physical and mental exams.). Movant must show that the examination is relevant to issues that are "genuinely in controversy in the case." *Coates*, 758 S.W.2d at 753. Second, the movant must prove a "reasonable nexus" between the condition in controversy and the examination. *Id.* Finally, the movant must "demonstrate that it is not possible to obtain the desired information through means that are less intrusive than a compelled examination." *Id.*

The Department argued at the hearing on appellant's motion, held December 17, 1999, that the motion was not presented to the trial court in a timely manner because it was filed within thirty days of the date set for trial. *See* Tex.R. Civ. P. 190.3(b)(1)(A). The motion was filed on December 14, 1999; the case was set for trial on January 6, 2000. When the trial court considered the motion on December 17, 1999, the discovery period had ended, and the case had already been reset twice. The third trial setting was three weeks away on January 6, 2000. The court was also informed that the case would have to be dismissed in March 2000 if not tried before then; Cumpian did not contest this fact. The child was out of town and could

---

**5.** Here, appellant made clear by the nature of her request that she did not want to be in the position of having to comply with the requirement in Tex.R. Civ. P. 204.2 of giving the Department a copy of the consulting expert's report if it was adverse to her position. In effect, she expressed a desire not to comply with Rule 204.2 and conditioned her motion on that desire. A trial court may legitimately consider such a required "condition" in deciding whether to grant the motion. The court has discretion to limit the delivery of the report on such terms as are just. Tex.R. Civ. P. 204.2(a).

not be examined until January at the earliest; again, I note the case was set for trial on January 6. The Department and the attorney ad litem (the child's attorney) objected to the lateness of the request for the examination. Appellant offered no time-table by which the examination could be completed and a report rendered. Under these circumstances, how did the trial judge abuse his discretion in denying the untimely motion on December 17, 1999?

In her brief to this Court, appellant makes the statement that she filed a subsequent motion for an expert to examine the child who would be "allowed to act as a consultation and/or testifying expert for Appellant." In fact, her subsequent motion did not request a testifying expert; it was limited solely to a consulting expert. The written motion did conflict with the oral argument she made to the trial court on the earlier motion. The record of the hearing on the first motion demonstrates the trial court in fact was led to believe that the requested expert would not be simply a consultant—instead, the expert would testify as a witness at trial. Since the discovery period had ended, it was not an abuse of discretion to deny the designation of a trial expert at that late stage. But what of a true "consultant," though requested so late?

I see no error under the circumstances here in the trial court's denial of an examination by an expert whose role was alleged to be solely a consultant. First, I note we are not asked to decide in this case whether it is error to deny a litigant a consultant; rather we are confronted solely with the issue of the denial of the examination of the child. I see no necessity for the examination of the child if the purpose of the consultant is to advise counsel on how to read medical records or cross-examine medical witnesses. Although Cumpian complains in generalities of her trial counsel's inability to understand medical issues, her counsel's cross-examination of the witnesses at trial shows no ineptitude and, in fact, Cumpian points to no specific area of medical testimony her counsel was unable to cross-examine. Appellant has not shown that she could not obtain the same information through some other "means that are less intrusive than a compelled examination." *Coates*, 758 S.W.2d at 753.

I also believe that the hearing record on the first motion demonstrates that appellant intended to use this expert to testify at trial, despite the fact that her first motion and her subsequent, or second, motion limited her request solely to a consultant's examination. Assuming that the motion was also intended to obtain an expert testifying witness so close to trial, the motion was also properly denied as untimely.

The court specifically stated at the December 17, 1999, hearing that "it may be that as I get into the trial and hear your side and cross examination, maybe then I will see your side of this argument." Since the trial was to the court rather than to a jury, the judge said the court would permit the motion to be re-urged at trial in the context of the evidence being presented and might grant the motion then; generally a party must comply with such a suggestion by the court to preserve an issue for appeal. *See generally Bushell v. Dean*, 803 S.W.2d 711 (Tex.1991).

Evidence began on February 10, 2000. Cumpian made an offer of proof when she began her rebuttal case after the appellee had already rested. It is unclear why she expected to be able to offer expert testimony from a witness she had by written motion requested be used solely as a consultant and whose opinion she asked be provided confidentially and solely to her— unless, of course, she always intended that the expert would be a witness despite the

statements in her written motion. Nevertheless, at trial, appellant's attorney made her offer of proof from her proposed expert witness, if she were allowed an exam, and limited the offer to proof of the following three "facts:"

A. [M.A.C.] was not born "addicted" to cocaine;

B. [M.A.C.] was not born "addicted" to alcohol;

C. The diagnosis of "fetal cocaine addiction" is not a diagnosis recognized by the medical profession; and has not been tested; the technique relies upon the subjective interpretation of the expert; the theory has not been shown to have been subjected to peer review and publication; the technique's potential rate of error is unknown; the underlying theory has not been generally accepted as valid by the relevant scientific community.

Based on this offer of proof, the trial request for the exam was denied. While the initial motions for an examination were untimely and were not—at least in writing—requests for a testifying expert, the trial court's reconsideration of the request at trial was based on the offer of proof. While I question how Cumpian intended to offer testimony from an expert untimely hired and designated purely as a consultant, our review of the denial of the exam at trial must be based on Cumpian's specific offer of proof at trial as that is what was presented to the trial court for decision at that time. *See* Tex.R.App. P. 33.1(a)(1)(A).

A.) Addicted to cocaine at birth: In reviewing the trial court's ruling, I note first that the definition of being born addicted to cocaine is a statutory definition. *See* note 2 herein. Cumpian does not contest the fact that the child was born with cocaine in his bodily fluids; she admits this and admits she was the source of the cocaine. On appeal she does not even contest the trial court's finding of fact on that issue. The first basis for the examination was not an issue "genuinely in controversy." *See Coates,* 758 S.W.2d at 753. An exam by another physician one year after the birth could not disprove what appellant admitted and what the undisputed blood tests established at M.A.C.'s birth. There is no "reasonable nexus" between the cocaine addiction at birth and the requested exam. *See id.*

B.) Alcohol addiction at birth: Given the indisputable evidence of cocaine addiction at birth, the trial court did not err in failing to grant an examination to disprove alcohol addiction at birth. Cocaine addiction at birth is sufficient by itself to support termination of the parental relationship, if the termination is in the best interest of the child. Furthermore, there is no indication how an examination one year after birth would be relevant to alcohol addiction at birth. There is no allegation by any party that the child was being given alcohol at that time. Again no "reasonable nexus" was shown between the requested exam and alcohol addiction (the stated basis for the exam) when the child was born.

C.) Fetal Cocaine Addiction as Diagnosis: With respect to Cumpian's offer of proof that the theory of fetal cocaine addiction has not been accepted in the relevant scientific community, she failed to show why an exam of this child would be necessary. If the theory of fetal cocaine addiction is without scientific or medical basis, she could prove this without an examination of M.A.C. Cumpian failed to demonstrate "that it is not possible to obtain the desired information through means that are less intrusive than a compelled examination." *Coates,* 758 S.W.2d at 753. Appellant did not meet her burden

of establishing at trial good cause for the exam.

The majority remands this case so Cumpian can hire a medical expert to examine the child. To what end? Cumpian did not dispute that M.A.C. was born with cocaine in his system. No physical examination of the child would alter the results of the tests administered in February 1999 at the child's birth. Cumpian admits that M.A.C. has a feeding disorder, and she testified she agrees with the type of special treatment necessary for the disorder. Whether M.A.C.'s special needs are a result of being born with cocaine in his bodily fluids or the mother's use of alcohol does not control the judgment here. The trial court expressed concern regarding the mother's ability, given the extensive evidence of her own personal history, to care for a child who has special needs. The mother concedes the child has special needs. She just does not know the extent of those needs—and understandably so—since it is unlikely that the child's future needs could be predicted accurately by anyone.

The overwhelming evidence supports the trial court's conclusion that Cumpian does not have the ability to care for a child with special needs. The trial court's decision not to allow an exam by yet another doctor to determine the current extent or to attempt to predict the future extent of those special needs, even if that possibly could be done, was not an abuse of his discretion. The best interest of the child was—and must be—the focus of the trial judge. I would affirm the trial court's judgment.