**In the Interest of N.R.C. and L.A.C.**

**No. 14–01–01241–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 5, 2002.

Richard N. Countiss, Houston, for appellants.

Marcia L. Zimmerman, Houston, Otto D. Hewitt, Alvin, for appellees.

Panel consists of Justices EDELMAN, SEYMORE, and GUZMAN.

## OPINION

EVA M. GUZMAN, Justice.

Rachel appeals from a judgment terminating her parental rights.[1] She challenges the permissibility of the trial court's sanctions and its refusal to grant her request for an independent psychological examination of the children and their father, David. The trial court's sanctions order

---

1. Because of the nature of this case, we refer to the parties by their first names only and the children by their initials only. *See* TEX. FAM. CODE ANN. § 109.002(D) (Vernon 1996); *see also S.V. v. R.V.*, 933 S.W.2d 1, 3 (Tex.1996).

precluded Rachel from presenting any witnesses other than herself at trial. We find the trial court abused its discretion in imposing sanctions that were both impermissible under the circumstances and violative of the *TransAmerican Natural Gas Corporation v. Powell*, 811 S.W.2d 913 (Tex. 1991) standards. We also find the trial court abused its discretion in denying Rachel's request for an independent psychological examination. Accordingly, we reverse and remand for a new trial.

## I. FACTUAL BACKGROUND

Rachel and David divorced in 1991. At that time, the trial court named them joint managing conservators of their two children, N.R.C. and L.A.C. The children lived with David during the school year and with Rachel during the summer. In August 2000, David sought and subsequently obtained termination of Rachel's parental rights.

Prior to trial on the termination suit, the trial court appointed an attorney ad litem for the children. The attorney ad litem filed a motion for security of costs and attorney's fees. The trial court granted the motion and ordered each party to deposit $2,500 with the ad litem as security. Rachel failed to pay the ad litem's deposit, and therefore, the ad litem filed a motion for enforcement of the trial court's order and for sanctions. In her motion, the ad litem requested that the trial court order Rachel to pay the costs and attorney's fees related to the motion. She also asked the trial court to strike Rachel's pleadings and enter a judgment in favor of David. In the alternative, the ad litem requested that the trial court hold Rachel in contempt and punish her as the trial court deemed just and fair. An associate judge heard the motion and granted the ad litem a judgment for attorney's fees in the amount of $1,048.35. Though the motion did not request such a sanction, the associate judge further sanctioned Rachel by prohibiting her from presenting witnesses on her behalf other than herself. The trial court adopted the associate judge's ruling, ordering that Rachel was "prohibited from presenting any witnesses on her behalf, save and except herself, at the trial on the merits."

At trial, David presented evidence that Rachel had verbally and physically abused the children and that the children did not want to visit Rachel. David introduced the testimony of Toni Jo Lindstrom, a licensed family counselor, and Dr. Grace Jameson, a clinical professor in psychiatry at the University of Texas Medical Branch at Galveston. Ms. Lindstrom and Dr. Jameson testified that it would be in the best interest of the children to terminate Rachel's parental rights. Rachel testified that she recognized the need to control her anger and that with appropriate psychological help, she could repair the relationship with her children. As per the sanction, Rachel was not allowed to present any other witnesses. The jury unanimously found that Rachel's parental rights should be terminated.

## II. ISSUES PRESENTED FOR REVIEW

Rachel raises four issues on appeal: (1) the striking of witnesses is an impermissible sanction for failing to pay attorney's fees; (2) the trial court did not comply with the *TransAmerican* standards; (3) the trial court abused its discretion and/or committed errors of law by striking her witnesses without notice; and (4) the trial court abused its discretion by refusing her request for a psychological examination of David and the children.

## III. DISCUSSION

Before addressing Rachel's points of error, we first address David's argument

that the sanctions issue should not be reached because Rachel failed to adequately perfect her appeal. Specifically, David argues the sanctions issue should not be reached because: (1) Rachel failed to appeal the master's ruling and thus did not adequately preserve error; (2) Rachel's offer of proof of the proposed witnesses' testimony is inadequate; and (3) the proposed witnesses' testimony is cumulative of Rachel's own testimony and, thus, its exclusion, if error, was harmless.

## A. FAILURE TO APPEAL THE MASTER'S RULING

██ David claims Rachel waived her challenge to the sanctions imposed by the associate judge because she did not file an appeal of the associate judge's ruling with the trial court. *See* TEX. FAM.CODE § 201.015. Although section 201.015 indeed states that a party *"may* appeal an associate judge's report by filing notice not later than the third day after the date the party receives notice of the substance of the associate judge's report," *Id.* (emphasis added), David fails to address section 201.015 in conjunction with section 201.016, which provides:

(a) Failure to appeal to the referring court, by waiver or otherwise, the approval by the referring court of an associate judge's report does not deprive a party of the right to appeal to or request other relief from a court of appeals or the supreme court.

(b) The date an order or judgment by the referring court is signed is the controlling date for the purposes of appeal to or request for other relief from a court of appeals or the supreme court.

TEX. FAM.CODE § 201.016; *see also In re S.G.S.,* 53 S.W.3d 848, 852 (Tex.App.-Fort Worth 2001, no pet.) (finding that failure of father-defendant to appeal associate judge's venue ruling to referring court did not preclude appellate review). Thus, under section 201.016, Rachel need not have appealed from the associate judge's sanctions ruling in order to preserve her right to complain to this court. *Id.*

At submission, David argued that the "other relief" referred to in subsection (a) means relief other than the particular measure which a party failed to appeal to the referring court. We conclude that the phrase "other relief" refers to any and all relief other than relief obtained from the referring court. Any other reading of the statute would defeat the primary purpose of the section 201.016, which is to allow litigants to appeal associate judges' rulings that they did not appeal to the referring court. A plain reading of the statutory language does not support David's interpretation of section 201.016. *See State Dept. of Highways & Pub. Transp. v. Gonzales,* 82 S.W.3d 322, 327 (Tex.2002) (noting that unambiguous statutes are to be interpreted according to their plain meaning).

## B. SUFFICIENCY OF THE OFFER OF PROOF

██ David also contends that Rachel's offer of proof was incomplete, and thus, the exclusion of her witnesses presents nothing for review. We disagree. Defense counsel began his offer of proof noting that Rachel would have called Paula Hudson, the executive director of the Jameson Center. In summarizing Hudson's proposed testimony, counsel introduced into evidence a letter in which Hudson detailed her observations of Rachel and remarked upon her progress and suitability as a parent. Hudson concluded that supervised visitation with "appropriate structuring" would provide opportunities within a safe environment to enhance both the development of positive relationships be-

tween Rachel and her children and to practice skills learned in therapy.

Defense counsel summarized the proposed testimony of Rachel's boyfriend and mother as follows:

"As further proof, had [Rachel] been allowed to call witnesses to testify in her own behalf she would have called Mr. Gregory Wassinger, who, as testimony has revealed, has been her significant other for the past four years, to testify to her actions and to the best interests of the children. Had she also been allowed to put on testimony she would have called Sameline [surname omitted] who has also been referred to in reference to this case as Grandma Sammie, also to testify to the best interests of the children."

■ Rule 103(a)(2) of the Texas Rules of Evidence provides that error may not be predicated upon a ruling which excludes evidence unless a substantial right of the party is affected, and the substance of the objection was made known to the trial court by offer of proof. *Ludlow v. DeBerry*, 959 S.W.2d 265, 269–70 (Tex.App.-Houston [14th Dist.] 1997, no pet.). To adequately and effectively preserve error, an offer of proof must show the nature of the evidence specifically enough so that the reviewing court can determine its admissibility. *Bohatch v. Butler & Binion*, 905 S.W.2d 597, 607 (Tex.App.-Houston [14th Dist.] 1995), *aff'd*, 977 S.W.2d 543 (Tex.1998); *Powell v. Powell*, 554 S.W.2d 850, 854–55 (Tex.Civ.App.-Tyler 1977, writ ref'd n.r.e.). Rather than mandating formal proof, however, the Rules require only a "short, factual recita-

tion of what the testimony would show is sufficient 'evidence' to preserve an issue for appeal." Cathleen C. Herasmichuk, Texas Rules of Evidence Handbook 96 (4th ed.2001). Courts prefer a concise statement over a lengthy or arduous presentation. *Tatum v. State*, 798 S.W.2d 569, 571–72 (Tex.Crim.App.1990). The offer of proof may be made by counsel, who should reasonably and specifically summarize the evidence offered and state its relevance unless already apparent. *Warner v. State*, 969 S.W.2d 1, 2 (Tex.Crim.App.1998). If counsel does make such an offer, he must describe the actual content of the testimony and not merely comment on the reasons for it. *Love v. State*, 861 S.W.2d 899, 900–01 (Tex.Crim.App.1993).

■ Counsel referenced the "best interests of the children" standard in his offer of proof. This term immediately invokes the relevant factors promulgated by the supreme court. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex.1976).[2] Here, as indicated above, Rachel's attorney adequately described the substance of the proposed testimony, introduced Hudson's letter and referenced the best interest of the children. We find this showing sufficient under the circumstances.

## C. CUMULATIVE NATURE OF THE TESTIMONY ON OFFER OF PROOF

■ In a final attempt to avoid an inquiry into the trial court's sanction, David contends the sanction was harmless, as the testimony sought to be elicited was "clearly cumulative" of that offered by Ra-

---

**2.** These factors include (1) the child's desires; (2) the child's physical and emotional needs, now and in the future; (3) the emotional and physical danger to the child, now and in the future; (4) the parental ability of the individuals; (5) the programs available to assist these individuals in promoting the child's best in-

terests; (6) the plans for the child by the individual or agency; (7) the stability of the home or proposed placement; (8) the parent's act or omissions that may indicate the existing parent child relationship is not a proper one; and (9) any excuse for the parent's acts or omissions. *Holley*, 544 S.W.2d at 371–72.

chel. Texas courts have long recognized cumulativeness as grounds for the exclusion of probative evidence. *Briones v. State*, 12 S.W.3d 126, 128 (Tex.App.-Fort Worth 1999, no pet.). However, the Texas Rules of Evidence discourage *"needless presentation of cumulative evidence,"* not cumulativeness in and of itself. Tex.R. Evid. 403 (emphasis added). The mere fact that another witness may have given the same or substantially the same testimony is not the decisive factor. *Bohmfalk v. Linwood*, 742 S.W.2d 518, 521 (Tex. App.-Dallas 1987, no writ). Rather, we consider whether the excluded testimony would have added substantial weight to the complainant's case. *Id.; see also Sims v. Brackett*, 885 S.W.2d 450, 454 (Tex.App.- Corpus Christi 1994, writ denied).

■■ As a litigant, Rachel retains the right to prove her case in the most persuasive manner possible. *See Alvarado v. State*, 912 S.W.2d 199, 213 (Tex.Crim.App. 1995).[3] To defend herself, she may require several witnesses addressing the same material issue, as the testimony may come from disinterested sources or witnesses with differing vantage points. *Id.* Indeed, litigants may, and often do, offer evidence from several different witnesses to prove one specific material fact. Often, the cumulative effect of the evidence heightens, rather than reduces, its probative force. *Id.* Where, as here, different witnesses were to offer varying perspectives of the best interest of the children, the probative effect may likely have been heightened by the testimony of the stricken witnesses.

Based upon her own analysis and observations, Hudson's testimony was unique and not cumulative of any testimony given by Rachel. *See Nikoloutsos v. Nikoloutsos*, 47 S.W.3d 837, 839 (Tex.App.-Beaumont 2001, pet. denied) ("The testimony of a disinterested person undoubtedly carries more weight than similar testimony coming from interested parties to the case.") Though David insists that Rachel's mother and boyfriend are interested witnesses, that possibility does not automatically transform their observations into needlessly cumulative testimony unworthy of consideration. Rare indeed is the family courtroom in which multiple interested witnesses do not testify as to the best interests of the children in a termination proceeding. To say that testimony from non-party witnesses would be needlessly cumulative of the testimony of a single party witness would endorse an overly broad rule which we decline to adopt. We do not find that the testimony of the stricken witnesses would have been needlessly cumulative of that offered by Rachel.

## IV. APPELLANT'S POINTS OF ERROR

### A. STRIKING PLEADINGS FOR FAILURE TO PAY AD LITEM FEES

■■■ Rachel claims the trial court abused its discretion because the striking of witnesses is an impermissible sanction for failing to pay attorneys fees.[4] We agree.

---

**3.** In 1998, the Texas Rules of Civil and Criminal Evidence were unified into the current Texas Rules of Evidence. *See* Tex.R. Evid. 101(b). Though this is a civil proceeding (with arguably quasi-criminal underpinnings), we find guidance in the evidentiary analysis of the Texas Court of Criminal Appeals. *Cf. In re J.M.S.*, 43 S.W.3d 60, 63 n. 1 (Tex.App.-

Houston [14th Dist.] 2001, no pet.) (noting quasi-criminal nature of termination proceedings).

**4.** By rule, statute, and their own inherent power, trial courts have broad authority to sanction litigants for specific misconduct. Texas Rule of Civil Procedure 215 authorizes sanctions for abuse of discovery, while Rule

A trial court has inherent power to impose sanctions on its own motion. *In re Bennett,* 960 S.W.2d 35, 40 (Tex. 1997). In exercising discretion by ordering sanctions, a trial court is limited by the Due Process Clause of the United States Constitution. *Id.* at 40. We review a trial court's sanctions ruling under an abuse of discretion standard. *Chrysler Corp. v. Blackmon,* 841 S.W.2d 844, 852–53 (Tex. 1992); *Daniel v. Kelley Oil Corp.,* 981 S.W.2d 230, 234 (Tex.App.-Houston [1st Dist.] 1998, pet. denied). The trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 918 (Tex.1985). The attorney ad litem did not specify any discovery abuses in her motion for sanctions.[5] Rather, the motion was entirely premised on the issue of attorney's fees due her. Although the exclusion of evidence is recognized as an appropriate deterrent to abuse of the discovery process, such a sanction is improper where the conduct bears no relationship to discovery. *Saxton v. Daggett,* 864 S.W.2d 729, 734 (Tex.App.-Houston [1st Dist.] 1993, orig. proceeding) ("Where there is no violation of the discovery rules, there is nothing to deter or punish, and no compliance to secure.");

*Baluch v. O'Donnell,* 763 S.W.2d 8, 10 (Tex.App.-Dallas 1988, orig. proceeding) ("A trial court abuses its discretion if the sanction it imposes does not further one of the purposes that discovery sanctions were intended to further."). *But see Shirley v. Montgomery,* 768 S.W.2d 430, 432–33 (Tex. App.-Houston [14th Dist.] 1989, orig. proceeding) (finding failure to pay into attorney ad litem's trust fund sanctionable as funds were for discovery expenses).

Particularly instructive is *Stubblefield v. Stubblefield,* in which this court confronted a sanction based upon similar facts. 818 S.W.2d 221, 221 (Tex.App.-Houston [14th Dist.] 1991, no writ). In that case, the trial court granted the appellant-father's motion for continuance contingent upon his reimbursing appellee-mother's litigation-related travel expenses. *Id.* The father failed to reimburse the mother, who then filed a motion for sanctions which requested that his pleadings be struck. *Id.* at 222. The trial court granted the mother's motion. *Id.* Finding no authority permitting a trial court to impose sanctions on such facts, this court reversed. *Id.* We observed that sanctions are authorized when a party fails to comply with proper discovery requests or fails to obey an order to

---

13 permits sanctions against attorneys who sign pleadings, motions, or other papers that are both groundless and either brought in bad faith or for the purpose of harassment. *See* Tex.R. Civ. P. 13, 215. The Texas Civil Practice and Remedies Code also allows sanctions for pleadings and motions filed for improper reasons. *See* Tex. Civ. Prac. & Rem.Code Ann. § 10.001 et seq. The ad litem's motion did not specify a rule or statute upon which the request for sanctions was based.

**5.** Although the motion was bare of any allegations of discovery abuse and did not invoke any rules related to discovery, the attorney ad litem did accuse appellant of witness tampering during one proceeding. In explaining the motion to the trial court, the attorney ad litem alleged:

[I]t is not my normal procedure to file a motion for enforcement on ad litem fees.... My biggest concern and the reason I filed that enforcement is that I had been instructed by Ms. Look that I was not to contact witnesses that were going to be billed against her account and that they've been instructed not to speak to me and then that left my hands tied in order to be able to represent the best interests of the children.

However, an attorney's unsworn statements are not evidence. *In re Doe 3,* 19 S.W.3d 300, 305 (Tex.2000); *Banda v. Garcia,* 955 S.W.2d 270, 272 (Tex.1997); *United States Gov't v. Marks,* 949 S.W.2d 320, 326 (Tex.1997). Thus, we cannot elevate the ad litem's mere assertion into evidence of discovery abuse.

provide or permit discovery. *Id.*[6] As neither a discovery request nor a discovery order had been violated, and as neither appeared to even have been implicated, this court found that the trial court had abused its discretion in striking the father's pleadings. *Id.*

In both *Saxton* and *Baluch,* trial courts struck the fathers' pleadings for their failure to pay interim attorney's fees. *Saxton,* 864 S.W.2d at 730; *Baluch,* 763 S.W.2d at 9. Though those cases dealt with motions for sanctions premised upon Rule 215, we find them sufficiently analogous in light of *Stubblefield,* in which the motion for sanctions did not appear to allege any abuses of discovery rules. *See Saxton,* 864 S.W.2d at 733; *Stubblefield,* 818 S.W.2d at 221; *Baluch,* 763 S.W.2d at 9. In neither *Saxton* nor *Baluch* did the father engage, or attempt to engage, in abusive discovery practices. *See Saxton,* 864 S.W.2d at 734; *Baluch,* 763 S.W.2d at 10. Indeed, the sanctions were enacted solely to punish the fathers for their failure to pay the fees in question. These courts clearly were not attempting to apply any of the enunciated purposes of discovery sanctions by striking the fathers' pleadings. *See Saxton,* 864 S.W.2d at 734; *Baluch,* 763 S.W.2d at 10.

Likewise, in this case, the trial court sanctioned Rachel for behavior wholly unrelated to discovery. We find no authorization for the trial court to sanction in this manner under the circumstances of this case. Accordingly, the trial court abused its discretion in striking all of Rachel's witnesses.

## B. THE *TRANSAMERICAN* INQUIRY

Rachel further contends that even if the trial court acted permissibly or pursuant to its inherent contempt powers in striking all of Rachel's fact witnesses, the sanction violates *TransAmerican* as an inappropriate death penalty sanction. *See TransAmerican Natural Gas v. Powell,* 811 S.W.2d 913 (Tex.1991).[7] At submission, much of the disagreement centered around *TransAmerican.* We recognize that *TransAmerican* and its progeny apply these factors to gauge the permissibility of *discovery* sanctions. *See generally Remington Arms Co., Inc. v. Caldwell,* 850 S.W.2d 167 (Tex.1993); *Chrysler Corp. v. Blackmon,* 841 S.W.2d 844 (Tex.1992); *Braden v. Downey,* 811 S.W.2d 922 (Tex. 1991). In its motion for sanctions, the attorney ad litem did not allege any discov-

---

**6.** Though holding that the trial court had exceeded its authority, this court did find it "reprehensible" that the father would agree in open court to reimburse the mother for her expenses and then later refuse to do that which he had promised. *See Stubblefield,* 818 S.W.2d at 222.

**7.** Assuming the trial court acted pursuant to its inherent power to sanction, we find that it abused in discretion in striking all of appellant's witnesses for the failure to pay the ad litem deposit. Trial courts wield inherent powers not derived from specific legislation or constitutional provisions but necessary for the exercise of the court's jurisdiction, administration of justice, and the preservation of the court's independence and integrity. *Eichelberger v. Eichelberger,* 582 S.W.2d 395, 398 (Tex.1979); *see also Bridas Corp. v. Unocal Corp.,* 16 S.W.3d 887, 889 (Tex.App.-Houston [14th Dist.] 2000, pet. dism'd w.o.j.) The trial court's inherent power to sanction exists *only* to the extent necessary to deter, alleviate, and counteract bad faith abuse of the judicial process, such as any significant interference with the traditional core functions of Texas courts. *Lawrence v. Kohl,* 853 S.W.2d 697, 700 (Tex. App.-Houston [1st Dist.] 1993, no writ) (citing *Kutch v. Del Mar College,* 831 S.W.2d 506, 510 (Tex.App.-Corpus Christi 1992, no writ)). Appellate courts reviewing sanctions imposed pursuant to the court's inherent power apply an abuse of discretion standard. *Lawrence,* 853 S.W.2d at 700. Under the facts of this case, we cannot say that the failure to pay the ad litem fee amounted to bad faith abuse of the judicial process so as to justify such a severe sanction.

ery abuses. No court reporter recorded the hearing at which the associate judge struck all of Rachel's fact witnesses. Thus, we do not know whether the ad litem argued discovery abuse at the hearing on the motion. If she did make such an argument, we do not know whether Rachel objected or tried the issue by consent. Neither the associate judge nor the trial court referenced discovery abuse in their respective orders. In its Order on Petition for Enforcement of Prior Order, the trial court did not mention discovery abuse as a ground for the sanction. Rather, the order merely reiterated Rachel's previous failure to comply with the court's order requiring the deposit of the attorney ad litem's fees into escrow. Thus, we cannot assume that the trial court's order is properly characterized as a "discovery sanction." However, even assuming that the trial court adopted the associate judge's sanctions recommendation based on the attorney ad litem's allegations of witness tampering, thereby predicating the sanctions order on alleged discovery abuse, we find the *TransAmerican* factors instructive in our inquiry into this particular death penalty sanction.[8]

 Any sanction that adjudicates a claim and precludes the presentation of the merits of the case constitutes a death penalty sanction. *Adkins Servs., Inc. v. Tisdale Co., Inc.,* 56 S.W.3d 842, 845 (Tex. App.-Texarkana 2001, no pet. h.); *In re P.M.B.,* 2 S.W.3d 618, 624 (Tex.App.-Houston [14th Dist.] 1999, no pet.); *In re Striegler,* 915 S.W.2d 629 (Tex.App.-Amarillo 1996, pet. denied).[9] The refusal to permit a parent to call any fact witnesses in a termination proceeding eviscerates that parent's ability to present the merits of her defense. Because testimony other than her own is essential in defending against termination of her parental rights, the exclusion of Rachel's witnesses is properly characterized as a death penalty sanction. *P.M.B.,* 2 S.W.3d at 624 (noting that the exclusion of evidence is an extreme penalty akin to the striking of pleadings); *see also Roberts v. Golden Crest Waters, Inc.,* 1 S.W.3d 291, 292 (Tex.App.-Corpus Christi 1999, no pet.) (noting that trial court's exclusion of all of a party's witnesses was a death penalty sanction as it precluded the presentation of the case).

 In *TransAmerican,* the supreme court promulgated factors for courts to use in weighing whether a discovery sanction is just. 811 S.W.2d at 917; *see also Daniel v. Kelley Oil Corp.,* 981 S.W.2d 230, 234–35 (Tex.App.-Houston [1st Dist.] 1998, pet. denied). Under the test set forth in

8. No court reporter recorded the hearing at which the associate judge struck all of Rachel's fact witnesses. As appellant, Rachel bears the burden to produce the entire record to prove harmful error that entitles her to reversal of the case. *See McFarland v. Szakalun,* 809 S.W.2d 760, 764 (Tex.App.-Houston [14th Dist.] 1991, writ denied). When the record is incomplete, we must assume that the portion omitted supports the correctness of the trial court's judgment. *Id.* However, in cases that involve the parent-child relationship, the best interests of the child or children are of paramount importance. *In re Macalik,* 13 S.W.3d 43, 45 (Tex.App.-Texarkana 1999, no pet. h.). From the record in the present case, we are able to address the issues of

whether the trial court may impose such a sanction for such an infraction and whether that sanction was permissible under the *TransAmerican* standards.

9. Though certainly not dispositive of the issue, David's counsel stated before the trial court that she understood the exclusion constituted "a death penalty sanction and that's very harsh especially when she's paid the trial retainer." *Cf.* TEXAS LAWYER'S CREED—A MANDATE FOR PROFESSIONALISM, § III(19) ("I will not seek sanctions or disqualification unless it is necessary for the protection of my client's lawful objectives or is fully justified by the circumstances.")

*TransAmerican,* we measure the just nature of a sanction by considering: (1) whether a direct relationship exists between the offensive conduct and the sanctions imposed; and (2) whether the sanctions are excessive. 811 S.W.2d at 917.

The first standard requires a direct relationship between the offensive conduct and the sanctions. *Id.* Accordingly, a just sanction must be directed against the abuse and attempt to remedy any prejudice caused to the innocent party. *Id.* Here, the death penalty sanction of exclusion of witnesses is simply incongruent with the failure to pay the ad litem's fee. The compensation of the attorney ad litem bears no direct relationship to the testimonial evidence Rachel sought to adduce at trial. Were this a case involving misconduct in the discovery process, it might follow that an exclusion of essential evidence would directly relate to the abuse of the discovery process. Yet here, the evidentiary sanction was designed to punish the unrelated procedural obligation to pay the attorney ad litem. We disapprove of a sanction premised upon any such an unrelated connection. In no respect are the two directly related, and thus, the trial court's sanction does not pass the first prong of the *TransAmerican* test.

Next, the sanction must not be excessive. *TransAmerican,* 811 S.W.2d at 917. Colloquially, "the punishment should fit the crime." *Id.; Alvarado v. Farah Mfg. Co.,* 830 S.W.2d 911, 914–16. In the present case, the sheer magnitude of the interest at stake in a termination proceeding suggests that striking *all* of a party's witnesses is an excessively severe sanction. *See Eason v. Eason,* 860 S.W.2d 187, 191 (Tex.App.-Houston [14th Dist.] 1993, no writ) (Draughn, J., dissenting) (recognizing that trial court's exclusion of a mother and her witnesses from testifying in custody proceeding constituted a "civil death penal-

ty"). Certainly, the trial court was aware of the gravity of the termination of parental rights, as it paused to recognize such a proceeding as a "very severe thing" and dub it the "death penalty of the parent-child relationship." *See* SAMPSON & TINDALL, TEXAS FAMILY CODE ANNOTATED § 161, Introductory Comment p. 757 (2001) (describing a termination of parental rights as "the capital punishment of civil law"). So weighty are the interests at stake that the Texas Supreme Court has recognized that the involuntary termination of parental rights implicates fundamental constitutional rights. *Holick v. Smith,* 685 S.W.2d 18, 20 (Tex.1985); *In re E.L.T.,* 93 S.W.3d 372, 377–78 (Tex.App.-Houston [14th Dist.] 2002, no pet. h.) (Guzman, J., concurring). Where, as here, a private party—and not the State itself—is attempting to terminate parental rights, the constitutional protections are equally applicable. *See Holick,* 685 S.W.2d at 19–20 (noting constitutional implications in case in which father brought termination proceeding against mother). Thus, in analyzing the severity of the sanction, we must bear in mind that an exclusion of all fact witnesses severely limits a party's ability to protect its fundamental liberty interest in the direction of a child's upbringing. *See In re G.M.,* 596 S.W.2d 846, 847 (Tex.1980) (observing that termination proceedings must be strictly scrutinized so as to safeguard "the natural right between parents and their children").

This court has previously reviewed four factors in determining whether a sanction is excessive:

The most important factors to consider in determining whether a sanction is excessive are (1) whether the court considered and/or tested lesser sanctions to see if lesser sanctions would promote compliance and deterrence and discourage further abuse; (2) whether the sanctions are no more severe than necessary

to satisfy the legitimate purposes of a sanction (i.e., to secure compliance, to deter others and to punish); and (3) whether the party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit.

*Butan Valley, N.V. v. Smith*, 921 S.W.2d 822, 831 (Tex.App.-Houston [14th Dist.] 1996, no writ).

 We need only address the first two factors to conclude the sanction was overly severe. Trial courts must consider lesser sanctions before resorting to a death penalty sanction. *Butan Valley*, 921 S.W.2d at 827. Before the trial court excludes essential evidence, it must consider whether lesser sanctions are adequate to accomplish the needed compliance, deterrence and punishment. *P.M.B.*, 2 S.W.3d at 624. In an appeal regarding death penalty sanctions, we may not apply the legal presumptions in favor of a judgment that normally apply following a trial. *Fletcher v. Blair*, 874 S.W.2d 83, 85 (Tex.App.-Austin 1994, writ denied). No court reporter was present at the hearing before the associate judge; therefore, we have no record from that hearing. Ordinarily, we would look to the record to see if it reflects that the trial court considered the availability of lesser sanctions. *GTE Communications Sys.*, 856 S.W.2d at 729. Though we usually assume that an incomplete record supports the order of the trial court, we may not conclude from a silent record that the trial court considered lesser sanctions. *Compare McFarland*, 809 S.W.2d at 764 *with Fletcher*, 874 S.W.2d at 85. We find no evidence that the trial court considered lesser sanctions for Rachel's failure to pay the ad litem fee.

 We must also consider whether the sanctions are no more severe than necessary to satisfy the legitimate purposes of a sanction. *Butan Valley*, 921 S.W.2d at 831. Sanctions cannot be used to adjudicate the merits of a party's claims or defenses *TransAmerican*, 811 S.W.2d at 918. Here, the trial court left Rachel with only her own testimony to protect her fundamental liberty interest in the care of her children. Hudson's testimony that supervised visitation was a viable alternative was necessary to rebut the testimony of David's experts, who testified that termination would be in the best interest of the children. Had the jury heard Hudson's conclusions, it may have considered Dr. Jolly's psychological evaluation recommending therapy and visitations from a different perspective.[10] Observing that David brought forth several witnesses, including experts, the jury might have drawn certain negative inferences from Rachel's apparent failure to call any witnesses in her own defense. It is not unreasonable to suspect that Rachel's appearance as her sole witness—without other fact or expert witnesses to buttress her testimony—prejudiced her in the eyes of jury.

Additionally, to silence witnesses whose testimony is probative of the child's best interest is to do a disservice to the child. We cannot approve of such a sanction considering the interests at stake. As this court has observed:

> [T]he best interest of a child can only be attained when a court's decision is as well-informed as the circumstances allow. A decision on custody, possession, or access can rarely be well-informed without consideration of the evidence and perspectives of both parents. Be-

---

**10.** Though Dr. Jolly did not testify, David introduced his June 4, 2000 psychological evaluation of Rachel into evidence.

cause the exclusion of any important evidence as a discovery sanction can only produce a less-informed decision, contrary to the best interests of the child, we believe that it should be resorted to only where lesser sanctions are either impracticable or have been attempted and proven unsuccessful.

*P.M.B.*, 2 S.W.3d at 624–25. Indeed, to strike a parent's witnesses in a termination proceeding is to disregard "[p]ertinent facts which may directly affect the interests of the children [and which] should be heard and considered by the trial court regardless of the lack of diligence of the parties in their presentation of information to the court." *In re C.B.M.*, 14 S.W.3d 855, 865 (Tex.App.-Beaumont 2000, no pet.) (Burgess, J., concurring and dissenting). The best interests of the children cannot be served by the arbitrary prohibition of the testimony of persons with knowledge of relevant facts and probative opinions. Thus, the sanction in question is far more severe than necessary and therefore violates the *TransAmerican* standards.

## C. NOTICE AND DUE PROCESS

Rachel further contends she did not have any notice that her witnesses could be stricken, and thus, her constitutional rights to due process were violated. In support of this argument, Rachel notes that the ad litem's motion for sanctions requested, in addition to the various costs and fees, that Rachel's pleadings be struck and that judgment be granted in favor of David. Nowhere in the motion did the ad litem request that Rachel's witnesses be struck, nor did the ad litem cite any authority for the proposition that courts wield the power to impose such a sanction under the circumstances of this case.

As we have already found the trial court's sanctions impermissible and violative of the *TransAmerican* standards, we do not find it necessary to address Rachel's notice argument.

## D. PSYCHOLOGICAL EXAMINATION

 Rachel complains that the trial court abused its discretion by refusing her pro se request for a psychological examination of David and the children. At the hearing on the motion, Rachel argued:

> I would like to see both of my children … and [David] have a thorough and complete battery of tests. They're wanting to prove a certain cause of action and they're saying that I'm to blame. I've caused this, that or the other by making points in their termination and I want to show that my children, number one, aren't damaged, and number two, that I am not the cause of it. There's never been any testing of anybody. There was brief testing of [L.A.C.]. The Court ordered me to have a full battery of tests, and they intend to use and have brought in Toni Jo Lindstrom, Ted Jolly and Dr. Jameson as witnesses in the case who are expected to give testimony so I would like to have an expert evaluate them so that we'll have an independent person who's evaluated it.

In June of 2000, Rachel had been ordered to have psychological evaluations and anger management sessions with Dr. Ted Jolly. Independent medical evaluations are permitted under the Texas Rules of Civil Procedure. *See* Tex.R. Civ. P. 204.1. To obtain an order under Rule 204.1, the requesting party must show both good cause and that the mental condition of a party, or a person in the custody, conservatorship or under the legal control of a party, is in controversy. *Id.* Family court judges may on their own initiative or on the motion of a party, appoint psycholo-

gists or psychiatrists to make any and all appropriate mental examinations of the children who are the subject of the suit or of any other parties. *Id* 204.4. The family court judge may make such an appointment irrespective of whether a psychologist or psychiatrist has been designated by any party as a testifying expert. *Id.*

In his First Amended Petition, David averred that Rachel had knowingly jeopardized the emotional well-being of the children. Additionally, when asked by the trial court about the grounds for termination, David's counsel replied that "psychological endangerment" prompted the suit. The jury charge defined "endangerment of emotional well-being" as "the systemic tearing down of another human being." Among the witnesses David produced at trial to support his theory were a licensed professional counselor and a psychiatrist. There is little doubt that the mental condition of Rachel, David and the children were at issue in this proceeding.

In her brief, Rachel relies on *In re M.A.C.* for the proposition that the trial court placed such a severe restriction on Rachel's ability to discover facts to contradict the other expert witnesses that she was deprived of a "champion in the battle of experts." 49 S.W.3d 923, 924 (Tex.App.-Beaumont, 2001, no pet.). Though we find this case persuasive as applied to these facts, we note that the Beaumont Court of Appeals withdrew this opinion only three weeks after Rachel filed her brief. Other courts, however, have come to the same conclusion. In *Laub v. Millard,* the trial court denied the husband's motion to compel his wife to submit to a mental examination in a suit for divorce. 925 S.W.2d 363, 364 (Tex.App.-Houston [1st Dist.] 1996, no writ). The wife had employed a psychiatrist and a psychologist, both of whom submitted affidavits to the trial court after

examining her. *Id.* Responding to interrogatories, the wife stated that both mental health professionals would testify so as to establish her incompetence during certain years. *Id.* As that was an issue in the case, the court of appeals noted that the wife put her mental condition in controversy and thereby gave the husband good cause for compulsory mental examination. *Id.* at 365. The court found that "fundamental fairness" dictated that the husband prevail, lest he be severely disadvantaged in the "battle of experts" expected at trial. *Id.* (quoting *Sherwood Lane Assocs. v. O'Neill,* 782 S.W.2d 942, 945 (Tex.App.-Houston [1st Dist.] 1990, orig. proceeding)).

*Laub,* however, is distinguishable in that the wife had employed the experts. We recognize, of course, that the expert witnesses in this case were not David's witnesses in the sense that he sought them out and hired them. These expert witnesses were appointed by the trial court and came to conclusions which favored David. David merely availed himself of their testimony. However, we do find the *Laub* case sufficiently analogous under these facts. The record reflects that in the termination case the trial court ordered only Rachel to submit to a battery of psychological tests. There is no evidence in the record of any such psychological tests performed on David or the children in connection with the termination proceeding. Although David, Rachel, and the children all attended various counseling sessions, Rachel's motion requested an independent psychological evaluation.

To prevail on her motion, Rachel must show both good cause and that the mental condition of a party, or a person in the custody, conservatorship or under the legal control of a party, is in controversy. *See* Tex.R. Civ. P. 204.1. Rachel merely sought access to the same type of psycho-

logical information that David sought to use against her in alleging "psychological endangerment." Here, the judge ordered that Rachel submit to a battery of psychological tests and then denied her reciprocal request that David do the same. Good cause for a psychological examination is established where the petitioner intends to use expert medical testimony to prove a fact in controversy. *Laub*, 925 S.W.2d at 364. We find that good cause for a mental examination was established when David evidenced his intent to use psychological and psychiatric testimony to prove his case. In so doing, David certainly made the mental condition on the parties and the children an issue in the proceeding. In denying Rachel's request, the trial court abused its discretion by leaving her at a severe disadvantage. *Id.*

## X. CONCLUSION

In conclusion, we find the trial court abused its discretion in striking all of Rachel's fact witnesses as it was without the power to do so and the measure violated the standards set forth in *TransAmerican.* We also find the trial court abused its discretion in denying Rachel's pro se motion for an independent psychological examination. The judgment of the trial court is reversed and the cause is remanded for a new trial.