Joseph Ray TAYLOR, Appellant,

v.

Kevin TAYLOR and Cheryl
Taylor, Appellees.

No. 01–07–00571–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

March 20, 2008.

Teresa Simpson Dunsmore, Houston, TX, for Appellant.

Jedediah D. Moffett, Jedediah D. Moffett, P.C., Houston, TX, Clinton W. Raney, Pasadena, TX, for Appellees.

Panel consists of Justices NUCHIA, HANKS, and HIGLEY.

## OPINION

LAURA CARTER HIGLEY, Justice.

In this suit affecting the parent-child relationship ("SAPCR"), Kevin and Cheryl Taylor petitioned the trial court requesting to be appointed the managing conservators of their three minor grandchildren, M.N.T., S.R.T., and C.N.T., in preference to the children's parents. Joseph Ray Taylor, the father of the children and son of Kevin and Cheryl, opposed the appointment. The case was tried to a jury. Because he had not tendered his exhibits and witness list at the pretrial conference, Joseph was not allowed to present any evidence at trial, other than his own testimony. The jury selected Kevin and Cheryl to be the primary joint managing conservators of the three children and chose Joseph and the children's mother, Mary Blank Taylor, to be managing conservators.[1] The trial court rendered judgment in conformity with the jury's verdict.

Of the eight issues presented by Joseph, we address the following two issues, which are necessary for the final disposition of the appeal: (1) whether the trial court abused its discretion when it sanctioned Joseph by prohibiting him from presenting non-party witnesses and exhibits at trial and (2) whether the record contains legally sufficient evidence to support an implied finding by the jury that appointment of Joseph as managing conservator "in preference" to Kevin and Cheryl was not in the children's best interest.

We reverse and remand.

## Sanctions

In his seventh issue, Joseph contends that the trial court abused its discretion when it ordered that Joseph could not present evidence at trial, either through exhibits or non-party witnesses, because he had not tendered his exhibits or witness list at the pretrial conference.

### A. Background Pertinent to Sanctions

Kevin and Cheryl filed their original SAPCR petition in December 2005. On August 29, 2006, the trial court signed a docket control order for a non-jury trial, which set the pretrial conference for October 27, 2006 and trial for October 30, 2006. On October 10, 2006, the trial court signed an amended docket control order for a jury trial. The dates for the pretrial conference and trial remained unchanged from the previous docket control order.

On October 19, 2006, Kevin and Cheryl filed a motion for continuance, requesting a continuance of the October 30 trial setting. Although no order on the motion appears in the record, trial did not occur on October 30, 2006.

On the bottom of the amended docket control order were handwritten notations specifying alternate dates for the pretrial conference and for trial. For the first alternate setting, the trial court designated February 9, 2007 for the pretrial conference and February 12, 2007 for trial.

The record also reflects, and it is not disputed, that the trial court signed an ordering permitting Joseph's attorney to withdraw on January 3, 2007.

On Friday, February 9, 2007, the case was called for pretrial conference. Also on that date, Joseph filed a pro se motion for continuance. In the motion, Joseph explained that he had retained a new attorney, who was unable to attend the pretrial conference. Joseph requested a continu-

---

1. Mary Blank Taylor appeared pro se in the trial court but does not challenge the judg- ment on appeal.

ance "to allow my attorney sufficient time to be brought up to speed on the key components of this case."

Joseph also appeared pro se at the pretrial conference. He explained to the trial court that he had retained an attorney the day before and, for that reason, had filed a motion for continuance. The trial court denied the motion stating, "You all are set now. And you all are my number one case so you all are going on Monday."

Also at the pretrial conference, Kevin and Cheryl, through their counsel, tendered their trial exhibits and witness and exhibit lists to the trial court and to Joseph. The trial court asked Joseph if he had exhibits. Joseph responded that he did not "at that time." The trial court informed Joseph that, if he did not tender his exhibits that day, he would not be allowed to present exhibits at trial. Joseph acknowledged that he understood the court's ruling.

The trial court then asked Joseph if he had a witness list. Joseph responded that the list was not available at that time because he had given "everything" he had to his new attorney. Joseph requested a recess to contact his new attorney, who Joseph explained was "on another case." The trial court allowed Joseph five minutes to reach his attorney. The court also admonished Joseph, "You have known about this setting for a long time." Joseph explained, "I've known about this setting, yes ma'am, I do agree. But my lawyer did not drop out of this case until January 1st, and it's very difficult to come up with the amount of money that the lawyers request on a particular case." The trial court then told Joseph, "I understand. But if you don't have a witness list, then I'm not going to allow you to call any witnesses other than parties." Trial was scheduled to start on Monday, February 12, 2007.

On Monday morning, Joseph's new counsel appeared with Joseph in court. Before trial commenced, the trial court addressed additional pretrial matters. The trial court asked if, after reviewing Kevin and Cheryl's exhibits, an agreement could be reached regarding the admissibility of the exhibits. Joseph's attorney then informed the trial court that she had a motion in limine to present. The trial court responded, "I'm not going to entertain a motion in limine at this time because all pretrial motions were to have been heard Friday at pretrial."

Joseph's counsel then objected and explained to the trial court that Joseph had retained her only late Thursday and that she had to be in court regarding another case on Friday. The trial court responded, "Yes, ma'am. I can appreciate that." Joseph's counsel continued, "I assumed there had been previous continuances that were not at all the fault of my client. It's only fair not to exclude the bias [sic], the inclusion of evidence against him." The trial court then stated,

> Ma'am, my pretrial for this case was Friday at 10:00. And your client was present and presented a motion for continuance which was denied. So at this point in time—and he was told that he would not be able to present witnesses other than parties nor any documentary evidence because none was tendered and there were no motions in limine presented at that point in time.

Joseph's counsel answered, "Yes, your Honor. But my client is not an attorney. I would like to object on the record on the basis of basic fairness."

At one point in the discussion, the trial court remarked that Joseph had agreed to allow his other attorney to withdraw. Joseph's counsel explained that Joseph had agreed to the withdrawal because he could not afford to pay the attorney. She told

the trial court that Joseph and her husband worked together.

During the hearing, Joseph's attorney also offered Joseph's trial exhibits and a witness list. The trial court again ruled that, because he had not tendered those items at the pretrial conference, he would not be allowed to present non-party witnesses or exhibits at trial.

Trial proceeded, and Joseph presented no witnesses, other than his own testimony, or tangible evidence. While cross-examining a witness, Joseph requested to offer a CPS report for rebuttal purposes. The CPS report was listed on Kevin and Cheryl's exhibit list, but not introduced by them at trial. The trial court denied Joseph's request to use the report on the basis that he had not timely tendered his exhibits at the pretrial conference.

■ Post-trial, Joseph filed a motion for new trial. In the motion, Joseph objected to the sufficiency of the evidence to support the jury's verdict. He also complained of the trial court's ruling that he could not present witnesses or exhibits at trial, asserting the ruling was "manifestly unjust." [2]

### B. Analysis

■ Rule of Civil Procedure 166 permits a trial court to direct parties to appear before it at a pretrial conference to consider, inter alia, the exchange of witness lists and the marking and exchange of exhibits. *See* TEX.R. CIV. P. 166. Rule 166 functions "to assist in the disposition of the case without undue expense or burden to the parties." *Id.* The rule also permits a trial court "to make an order that recites the action taken at the pretrial conference;" that is, the rule permits the trial court to sign pretrial orders. *See id.* As we have previously noted, one of the purposes of the pretrial order is to aid in the orderly disposition of cases. *British American Ins. Co. v. Howarton,* 877 S.W.2d 347, 351 (Tex.App.-Houston [1st Dist.] 1994, writ dism'd by agr.).

■ Although Rule 166 does not expressly authorize the trial court to impose sanctions for violations of a pretrial order, the Texas Supreme Court has determined that such power is implicit in Rule 166. *Koslow's v. Mackie,* 796 S.W.2d 700, 703–04 (Tex.1990). Nonetheless, the sanctions imposed must be just and appropriate. *In re Bledsoe,* 41 S.W.3d 807, 812 (Tex.App.-Fort Worth 2001, orig. proceeding).

■ We review the trial court's imposition of sanctions in this case under an abuse of discretion standard. *Koslow's,* 796 S.W.2d at 704. The test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principles, or equivalently, whether under all the circumstances of the particular case the trial court's action was arbitrary or unreasonable. *Id.* In conducting our analysis, we recognize that the trial court's discretion in imposing sanctions is limited by the standards set out in *TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913 (Tex.1991). *See Wal–Mart Stores, Inc. v. Butler,* 41 S.W.3d 816, 817–19 (Tex.App.-Dallas 2001, no pet.) (concluding that *TransAmerican* standard applies to sanctions imposed for violating

---

**2.** Kevin and Cheryl assert that Joseph has waived his appellate complaints regarding the sanctions because he did not object in the trial court. We disagree. Joseph's counsel did object at the Monday morning pretrial hearing to the trial court's sanctions and explained to the trial court the circumstances that led to Joseph's exhibits and witness list not being tendered at the pretrial hearing. Joseph also challenged the sanctions in his motion for new trial. Thus, the trial court was made aware of Joseph's challenges to the sanctions imposed, and such challenges were preserved for appeal.

pretrial order); *see also Bledsoe*, 41 S.W.3d at 812 (applying *TransAmerican* standard to sanctions imposed for violating pretrial order).

In *TransAmerican*, the supreme court developed a two-part test for courts to apply when determining whether a sanction is "just." 811 S.W.2d at 917. First, there must be a direct nexus among the offensive conduct, the offender, and the sanction imposed. *Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex.2003) (citing *TransAmerican*, 811 S.W.2d at 917). A just sanction must be directed against the abuse and toward remedying the prejudice caused to the innocent party, and the sanction should be visited upon the offender. *Id.*

■ Second, just sanctions must not be excessive. *TransAmerican*, 811 S.W.2d at 917. That is, a sanction imposed should be no more severe than necessary to satisfy its legitimate purposes, which include securing compliance with discovery rules, deterring other litigants from similar misconduct, and punishing violators. *Id.* For this reason, the supreme court requires courts to consider less stringent sanctions and whether such lesser sanctions would fully promote compliance. *Id.*

We first discuss whether the sanctions imposed were directly related to the abusive conduct. Joseph does not dispute that he was aware of the pretrial deadlines. But, it appears that Joseph, and his new counsel, believed that the trial court would grant a continuance to allow his newly retained counsel to meet the pretrial requirements, given the circumstances. It is undisputed that Joseph was without counsel for a month preceding the pretrial conference and had only retained new counsel

the evening before the hearing. The trial court was aware that Joseph's new counsel was in court on another matter at the time of the pretrial conference. While Joseph had apparently agreed to his first counsel's withdrawal, the trial court was made aware that Joseph was financially unable to retain new counsel before he did and that his present counsel is the wife of Joseph's coworker. Thus, nothing in the record indicates that Joseph's lack of representation was due to any lack of diligence or fault on his behalf or that he did not make every effort to secure new counsel.

■ Sanctions fail under the first *TransAmerican* prong if the party seeking the sanctions could show no prejudice related to the conduct of the offending party.[3] *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex.1992). Here, it is not apparent that Kevin and Cheryl were prejudiced by Joseph's failure to present his witness list and exhibits at the pretrial hearing on Friday. The record from the Monday morning hearing indicates that Joseph sought to have only one witness testify at trial. The record also indicates that Kevin and Cheryl's counsel was already aware of the identity of that witness. We further note that CPS report Joseph sought to introduce for rebuttal purposes was an exhibit already listed on Kevin and Cheryl's exhibit list. Thus, prejudice to Kevin and Cheryl is not evident on this record. *See Bledsoe*, 41 S.W.3d at 814.

We next consider whether the sanctions were excessive. Nothing in the record indicates that the trial court considered lesser sanctions or that lesser sanctions would not have been effective. *See id.* The record also does not show that Joseph was warned, prior to the pretrial confer-

---

**3.** We are aware that Kevin and Cheryl did not request the sanctions at issue, rather, they were imposed sua sponte by the trial court. However, we see no reason why the same prejudice analysis should not apply.

ence, that his failure to tender his exhibits and witness list at the pretrial conference would preclude him from presenting any testimonial or documentary evidence at trial. With respect to the pretrial conference, the amended docket control order provided, in relevant part,

> Trial counsel are ORDERED to attend and to be prepared to discuss all aspects of the suit and trial. . . . Exhibits shall be pre-marked (whether you think that you are going to use it or not), discussed and stipulations made with a list for the Court. You will be required to show cause why any of the terms of this order are not timely completed. Failure to obey this order may result in fines and/or sanctions.

The order's vague allusion to sanctions did not place Joseph on notice that he risked being unable to present a defense at trial if he failed to meet the pretrial deadlines. Moreover, the order makes no express mention of tendering a witness list at the pretrial conference.

The record also does not reflect any past actions by Joseph that would justify the imposition of such harsh sanctions. The record does not indicate that Joseph or his counsel had, at any point, engaged in any type of bad faith conduct, disregarded the rules of procedure, or caused a delay in the trial setting. Nor is there any showing that Joseph had abused the discovery process or otherwise failed to comply with the trial court's orders prior to the pretrial conference.

In addition, the sanctions imposed in this case are difficult to reconcile with the legislative mandate that "the best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." Tex. Fam.Code Ann. § 153.002 (Vernon 2002). Texas courts have recognized that regard

for the best interest of the child properly may be a factor influencing a trial court's ruling on procedural issues such as discovery sanctions. *See In re P.M.B.,* 2 S.W.3d 618, 624 (Tex.App.-Houston [14th Dist.] 1999, no pet.) (reversing trial court's exclusion of evidence as discovery sanction under former Rule of Civil Procedure 215(5) in conservatorship case); *see also In re C.H.,* No. 07–04–0428–CV, 2006 WL 3813751, at *2 (Tex.App.-Amarillo Dec.28, 2006, no pet.) (mem.op.) (affirming, in conservatorship case, trial court's ruling allowing late-disclosed witness to testify based on best interest of child).

We agree with the Fourteenth Court of Appeals that "the best interest of a child can only be attained when a court's decision is as well-informed as the circumstances allow." *P.M.B.,* 2 S.W.3d at 624–25; *In re N.R.C.,* 94 S.W.3d 799, 810 (Tex. App.-Houston [14 Dist.] 2002, pet. denied) (noting, "[T]o silence witnesses whose testimony is probative of the child's best interest is to do a disservice to the child."). We also agree with the following reasoning,

> A decision on custody, possession, or access can rarely be well-informed without consideration of the evidence and perspectives of both [parties]. Because the exclusion of any important evidence as a discovery sanction can only produce a less-informed decision, contrary to the best interest of the child, we believe that it should be resorted to only where lesser sanctions are either impracticable or have been attempted and proven unsuccessful.

*P.M.B.,* 2 S.W.3d at 625.

Here, the jury's conservatorship decision could not have been well-informed, and thus in the best interest of the children, without the jury first considering Joseph's evidence. We conclude that the trial court's sanction imposed in this case was

excessive. Accordingly, we hold that the trial court abused its discretion by prohibiting Joseph from presenting non-party witnesses and tangible evidence at trial.

 We may reverse only if the trial court's sanctions probably caused rendition of an improper judgment or probably prevented the appellant from properly presenting the case to this court. *See* Tex. R.App. P. 44.1(a). Here, the harm caused by Joseph's inability to present any evidence in defense of the SAPCR suit is patent. We agree with other courts that precluding a party from calling any fact witnesses and offering any tangible evidence is tantamount to a death penalty sanction. *See N.R.C.*, 94 S.W.3d at 810 (concluding that striking of all of mother's fact witnesses was death penalty sanction); *P.M.B.*, 2 S.W.3d at 624 (noting that exclusion of evidence is extreme penalty akin to striking of pleadings). By precluding Joseph from presenting *any* evidence at trial, other than his own testimony, the trial court eviscerated Joseph's ability to present effectively the merits of his defense. *See N.R.C.*, 94 S.W.3d at 810.

Moreover, though Joseph's counsel explained to the jury why he was not allowed to call any witnesses or present evidence, the jury likely drew negative inferences from Joseph's failure to either comply with the trial court's pretrial order or present evidence. *See id.* It is reasonable to assume that, without fact or expert witnesses to corroborate his own testimony, Joseph suffered prejudice in the eyes of jury. *See id.*

For these reasons, we hold that, on the record presented, the sanction imposed in this case probably caused the rendition of an improper judgment, which requires reversal. *See* Tex.R.App. P. 44.1(a).

We sustain Joseph's seventh issue.

### Legal Sufficiency of the Evidence

 In his fourth issue, Joseph contends that the Kevin and Cheryl did not present legally sufficient evidence to show that he had engaged in behavior or conduct "to support a finding that he would significantly impair the health or welfare of his children."[4] The charge in this case instructed the jury, in relevant part, that Joseph should be appointed the children's managing conservator *"in preference to* [Kevin and Cheryl], unless appointment of [Joseph] would not be in the best interest of [the three children] because appointment would significantly impair [the children's] physical or emotional development."[5] (Emphasis added.) We review

---

4. We acknowledge that our disposition of Joseph's seventh issue will result in reversal and remand of the case. Nonetheless, when we sustain a point that requires remand, we must still consider issues that call for rendition, before ordering a remand. *Lone Star Gas Co. v. Railroad Comm'n of Texas*, 767 S.W.2d 709, 710 (Tex.1989). In this regard, we review Joseph's fourth issue raising a legal sufficiency challenge. But we also recognize that an appellate court should only address those issues raised and necessary to a final disposition of the appeal. *See* Tex.R.App. P. 47.1. Thus, we should not only refrain from considering Joseph's other issues that would result in remand only, but also should refrain from addressing Joseph's issues, that while requesting rendition, are not necessary to the disposi-

tion of the appeal. Here, we do not know the specific basis of the jury's conservatorship award in this case. One basis on which the jury's verdict could have been founded, pursuant to the charge, is a finding by the jury that awarding Joseph managing conservatorship, in preference to his parents, would significantly impair the children's physical or emotional development. If legally sufficient evidence supports this implied finding, then we need not determine whether legally sufficient evidence supports the other possible grounds on which the jury based its verdict. *See id.*

5. Because no objection was made in the trial court (or on appeal), we express no opinion

**536**

Joseph's legal sufficiency challenge according to the charge as given. *See Minnesota Life Ins. Co. v. Vasquez*, 192 S.W.3d 774, 778 (Tex.2006).

In deciding a legal-sufficiency challenge, we determine whether there is evidence that would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.2005). To make this determination, we (1) credit all favorable evidence that reasonable jurors could believe; (2) disregard all contrary evidence, except that which they could not ignore; (3) view the evidence in the light most favorable to the verdict; and (4) indulge every reasonable inference that would support the verdict. *Id.* But, if the evidence allows only one inference, we may not disregard it. *Id.*

Family Code section 153.131(a) provides for the appointment of the parent as sole managing conservator or the parents as joint managing conservators, unless the court finds the appointment would not be in the best interest of the child because it would significantly impair the child's physical health or emotional development. TEX. FAM.CODE ANN. § 153.131(a) (Vernon 2002). For the court to award managing conservatorship to a non-parent under section 153.131, the non-parent must prove by a preponderance of credible evidence that appointing the parent as a managing conservator would result in serious physical or emotional harm to the child. *Whitworth v. Whitworth*, 222 S.W.3d 616, 623 (Tex.App.-Houston [1st Dist.] 2007, no pet.). Evidence must be presented to support the logical inference that some specific, identifiable behavior or conduct of the parent will probably cause that harm. *Id.*

on the propriety of this provision in the charge. *See Sw. Bell Tel. Co. v. Garza*, 164

This link between the parent's conduct and harm to the child may not be based on evidence that merely raises a surmise or speculation of possible harm. *Id.* When a non-parent and a parent are both seeking managing conservatorship, "close calls" go to the parent. *Id.*

An adult's future conduct may be somewhat determined by recent past conduct. In and of itself, however, evidence of past misconduct may not be sufficient to show present unfitness. *Id.* Further, it is wholly inadequate simply to present evidence that a non-parent would be a better choice as custodian of the child. *Id.* (citing *Lewelling v. Lewelling*, 796 S.W.2d 164, 167 (Tex.1990)). The non-parent must offer evidence of specific acts or omissions of the parent that demonstrate an award of custody to the parent would result in physical or emotional harm to the child. *Id.* Specific acts or omissions of a parent implicating a significant impairment to a child's emotional development may be inferred from direct evidence. *Id.*

In this case, evidence was presented at trial showing the following:
- Joseph and the children's mother, Mary, had a tumultuous marriage. Throughout the marriage the couple would separate, reconcile, and then separate again.
- Mary testified that she and Joseph engaged in physical violence with one another, including fist fights. Mary also testified Joseph tried to run her over with a truck with the children inside the vehicle.
- Because of the marital problems between Joseph and Mary, and due to Joseph's long work hours, the three

S.W.3d 607, 618–19 (Tex.2004).

 

children were raised primarily by their grandparents. The oldest child, M.N.T., had resided the majority of her seven years with Kevin and Cheryl, while the two younger children, six-year-old S.R.T. and four-year-old C.N.T., had lived most of their lives with their maternal grandparents.

- When Kevin and Cheryl told Joseph that they believed M.N.T. had been sexually abused because M.N.T was engaging in sexually inappropriate behavior, Joseph refused to seek help to determine whether M.N.T. had been sexually assaulted. Instead, Joseph was more concerned about "clearing his name" with respect to allegations that he had sexually abused M.N.T.

- Joseph made a comment to Kevin to the effect that he could not lay next to M.N.T. without ejaculating.

- Mary's sister, who babysat the children, testified that, when he came home from work, Joseph would send the children upstairs to play, while he watched television. While sending his own children upstairs to play, Joseph would spend time with his girlfriend's children and allowed them to watch television with him. Mary's sister believed that these and other actions of Joseph indicated that he favored his girlfriend's children over his own.

- Joseph had threatened that, if he gained custody of the children, the children's grandparents would never see the children again.

Applying the appropriate standard, we hold that the evidence is legally sufficient evidence to support an implied finding that appointment of Joseph would significantly impair the children's physical or emotional development.

## Conclusion

We reverse the judgment of the trial court and remand for further proceedings.