# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-16-00442-CV

R. H., Appellant

v.

D. A. and R. A., Appellees

FROM THE DISTRICT COURT OF SCHLEICHER COUNTY, 51ST JUDICIAL DISTRICT
NO. 3233, HONORABLE BARBARA L. WALTHER, JUDGE PRESIDING

## MEMORANDUM OPINION

Appellant R.H. (Mother) appeals the trial court's order appointing nonparents D.A. and R.A. as joint managing conservators of her child, R.E.G. In one issue, Mother contends that the trial court abused its discretion because D.A. and R.A. did not offer sufficient evidence to overcome the statutory presumption that the court should appoint her as R.E.G.'s sole managing conservator. *See* Tex. Fam. Code § 153.131. We will reverse and remand.

## BACKGROUND

In September 2014, R.E.G.'s father (Father) and Mother took one-month old R.E.G. to the emergency room in Eldorado, Texas. The parents reported to hospital staff that R.E.G. had fallen off the bed when Father was changing the infant's diaper. R.E.G. was unable to move his arm, and staff soon determined that R.E.G. had fractured his collar bone and right humerus. After

the attending doctor concluded that the injuries were inconsistent with the parents' version of events, the Department of Family and Protective Services intervened.

Soon after, the Department filed an original petition for protection of the child and, if necessary, for termination of the parental rights of R.E.G.'s Father and Mother. The Department also sought conservatorship of R.E.G., alleging that appointment of one or both of the parents as permanent managing conservator would not be in the best interest of the child because such appointment would significantly impair the child's physical health or emotional development. *See* Tex. Fam. Code § 263.404.

R.E.G. was removed from the parents' home and voluntarily placed with Father's uncle and aunt, D.A. and R.A., who reside in Junction, Texas. In October, 2014, the trial court entered temporary orders appointing the Department temporary managing conservator of R.E.G and ordering the parents to comply with service plans set out by the Department. The next month, D.A. and R.A. intervened in the suit and sought permanent managing conservatorship of R.E.G. *See* Tex. Fam. Code § 102.004; *In re N.L.G.*, 238 S.W.3d 828, 829 (Tex. App.—Fort Worth 2007, no pet.) (recognizing that foster parents with past substantial contact with child may intervene under section 102.004(b) in Department suit for termination).

In October 2015, Father agreed to be appointed a possessory conservator of R.E.G., to have limited access and visitation, and to pay child support and medical support.[1] The trial court

---

[1] While a managing conservator has wide ranging rights and duties with respect to the child's residence, medical treatment, and education, *see* Tex. Fam. Code § 153.132, a possessory conservator typically has visitation rights under terms and conditions set by the court, *see id*. § 153.192.

entered an order in accordance with the agreement of the parties and expressly found that appointment of Father as a managing conservator "would significantly impair the child's physical health or emotional development." In addition, the trial court's order stated that the order "in no way affect[ed] the conservatorship, visitation, child support, and medical support as to [Mother]."

On March 22, 2016, the Department filed a motion for an order approving monitored return to Mother. *See* Tex. Fam. Code § 263.403 (monitored return of child to parent). According to the motion, the Department thought that a monitored return of R.E.G. to Mother was appropriate because Mother had "participated in and completed the services set out in the plan developed for her by the Department in order to achieve family reunification." Further, the Department stated that it believed that Mother would "be able to provide a safe and adequate home for the child, as long as she continues with the recommendations of the Department, and that continued separation of the child from the mother would not be in the best interest of the child."

D.A. and R.A. filed a response to the Department's motion for monitored return, opposing the reunification of R.E.G. and Mother. In their response, D.A. and R.A. asserted that R.E.G.'s "separation from the Intervenors would cause emotional stress and would not be in the best interest of the child." Similarly, the court-appointed special advocate (CASA) filed a report with the court, disagreeing with the Department's goal of family reunification and instead recommending that the trial court order joint managing conservatorship of the child between D.A. and R.A. and Mother.[2]

---

[2] The attorney ad litem also filed a response, stating only that he disagreed with the Department's recommendation.

A final hearing before the trial court convened on April 6, 2016, and then reconvened on May 12, 2016. At the hearing, the Department recommended that the trial court order a monitored return of R.E.G. to Mother with continued involvement by the Department and other parties, including D.A. and R.A. The Department and Mother presented the testimony of several witnesses in support of the Department's recommendation, including testimony from two Department representatives, a CASA volunteer involved in the case, D.A., and Mother.[3] The testimony of these witnesses established, in part, the following undisputed facts:

- R.E.G. was born in August of 2014, when Mother was nineteen years old and shortly before Mother graduated from high school. Since the removal of R.E.G. by the Department, Mother has separated from R.E.G.'s Father and has come to believe that Father lied to her about how R.E.G.'s injuries were sustained.

- Mother was placed on a service plan by the Department. Mother has communicated regularly with the Department and complied with the requirements of the Department's service plan by (1) attending more than the required number of parenting classes; (2) completing individual counseling and psychological testing; (3) obtaining and maintaining a clean, appropriate home environment; and (4) providing for the basic needs of R.E.G., such as food, clothing, and diapers.

- Mother's service plan also required her to maintain a legal source of income. Mother was employed part-time at Stripes in Eldorado from March 2015 to May 2015 and then was then unemployed from May 2015 to December 2015. During this period of unemployment, Mother actively tried to find employment.

---

[3] The Department first presented the testimony of Rebecca Zapata, the supervisor with the Department who oversaw the Department's conservatorship of R.E.G. The Department also presented the testimony of Michelle Clay, a Department employee who on several occasions transported R.E.G. between Mother's home and D.A. and R.A.'s home and supervised at least some of R.E.G.'s supervised visits with Mother. Mother also presented the testimony of several witnesses, including Tina Bean, the court-appointed special advocate (CASA) who was familiar with the case.

- After the case began, Mother moved to San Angelo for better job opportunities and eventually found employment at a restaurant. Mother began working at the restaurant in December 2015 and, at the time of the hearing, was still employed by the restaurant and working full time. Despite the period of unemployment, the Department was satisfied that Mother had complied with the service plan's income requirement.

- When the case began, Mother was living with family and was working to save up money for an apartment. Mother has resided in her own apartment since March 2015. At the time of the final hearing, Mother was sharing a two-bedroom apartment with a roommate in San Angelo. She also had obtained her driver's license, purchased a vehicle without a loan, and saved approximately two hundred dollars.

- Mother relies on her sister-in-law and on her roommate for childcare when she works. Both were approved by the Department as appropriate caregivers.

- Mother was initially allowed only supervised visits with R.E.G. During these visits with R.E.G., Mother would feed him, bathe him, change him, and play with him. The Department considered the Mother's care of R.E.G. during these visits to be appropriate and the relationship between Mother and R.E.G. to be "good." Mother was later allowed unsupervised visits with R.E.G., including overnight visits.

- In December 2015, CASA did not recommend a monitored return of R.E.G. because, at that time, Mother did not have full time employment and a stable home. However, based on her observations of Mother with R.E.G., the CASA volunteer involved in Mother's case currently is not opposed to a monitored return "where everybody stays involved."

- R.E.G. has bonded with D.A. and R.A. while he has been in their care.

At the conclusion of the hearing, the trial court refused to order a monitored return of R.E.G. Instead, the trial court, without terminating Mother's parental rights, signed a final order appointing D.A. and R.A and Mother as joint managing conservators. In addition, the court granted D.A. and R.A. the exclusive right to determine R.E.G.'s primary residence and granted Mother visitation rights pursuant to a standard possession order.

5

On appeal, Mother challenges the trial court's decision to refuse to appoint her as R.E.G.'s sole managing conservator and to instead appoint her as joint managing conservator along with D.A and R.A. No party by cross-appeal or otherwise has argued that the trial court erred in not terminating Mother's parental rights. Thus, the only issue before us is the propriety of the trial court's decision with respect to conservatorship.

## STANDARD OF REVIEW

We review a trial court's decision regarding conservatorship for an abuse of discretion. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). A decision on conservatorship will be reversed only if the decision is arbitrary and unreasonable. *Id.*; *see Echols v. Olivarez*, 85 S.W.3d 475, 477 (Tex. App.—Austin 2002, no pet.).

In family law cases, the abuse-of-discretion standard overlaps with traditional sufficiency standards of review. *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied). Consequently, in applying the standard, we engage in a two-pronged inquiry: (1) whether the trial court had sufficient information upon which to exercise its discretion and (2) whether the trial court erred in its application of that discretion. *Echols*, 85 S.W.3d at 477-78. The focus of the first inquiry is the sufficiency of the evidence. *See Zeifman*, 212 S.W.3d at 588. Under the second inquiry, we must decide whether, based on the evidence before it, the trial court made a reasonable decision. *Id.*

When, as here, no findings of fact and conclusions of law were requested or filed, it is implied that the trial court made all findings necessary to support its judgment. *Worford v. Stamper*,

801 S.W.2d 108, 109 (Tex. 1990) (per curiam).  These implied findings may be challenged for legal

and factual sufficiency.  *Id*.

## ANALYSIS

*Parental Presumption*

Section 161.205 of the Texas Family Code authorizes the trial court to make any

orders in the child's best interest when it denies a petition to terminate the parent-child relationship.[4]

Tex. Fam. Code § 161.205.  While generally the trial court has wide latitude in determining the best

interest of the child, *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982), the Legislature has

explicitly limited the exercise of that discretion when a nonparent seeks appointment as a managing

conservator, *Lewelling v. Lewelling*, 796 S.W.2d 164, 167 (Tex. 1990).

The Texas Family Code creates a strong presumption that appointing a child's

parent as sole managing conservator (or both parents as joint managing conservators) is in the best

interest of the child.  *See* Tex. Fam. Code § 153.131; *Lewelling*, 796 S.W.2d at 167.  This

presumption is "deeply embedded in Texas law" and "is based on the natural affection usually

flowing between parent and child."  *In re V.L.K.*, 24 S.W.3d 338, 341 (Tex. 2000).  The parental

presumption provides for the appointment of a parent as sole managing conservator or the parents

---

[4]  There is no dispute that Section 161.205 generally permits a trial court to appoint a nonparent as a managing conservator when it denies a petition to terminate, as it did in this case. *See also* Tex. Fam. Code § 263.404 (providing that court may render final order appointing department as managing conservator without terminating right of parent if (1) appointment of parent would not be in best interest of child because "the appointment would significantly impair the child's physical health or emotion development" and (2) "it would not be in the best interest of the child to appoint a relative of the child or another person as managing conservator.").

as joint managing conservators unless the court finds that the appointment of the parent or parents would significantly impair the child's physical health or emotional development.[5] *See* Tex. Fam. Code § 153.131(a); *In re J.A.J.*, 243 S.W.3d at 616. To overcome the presumption, a nonparent seeking managing conservatorship must prove by a preponderance of credible evidence that appointing the parent as a managing conservator would result in serious physical or emotional harm to the child. *Whitworth v. Whitworth*, 222 S.W.3d 616, 623 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

### *Significant Impairment*

In her sole issue on appeal, Mother asserts that the trial court abused its discretion in requiring her to share conservatorship with D.A. and R.A. because the evidence is legally insufficient to defeat the parental presumption.[6] In other words, Mother asserts that the evidence fails to support the trial court's implied finding that her appointment as sole managing conservator would significantly impair R.E.G.'s physical health or emotional development. According to Mother, the undisputed evidence presented at the final hearing demonstrates that she adequately addressed any initial concerns that the Department had in removing R.E.G. from her care based on past conduct

---

[5] Although the Family Code provides several other grounds for overcoming the parental presumption, none of those grounds are at issue in this case. *See* Tex. Fam. Code §§ 153.004, 153.131 (b), 153.373.

[6] To determine if the evidence is legally sufficient to support the trial court's exercise of discretion, we consider the evidence in the light most favorable to the trial court's findings if a reasonable factfinder could and disregard evidence to the contrary unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of the evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Id*. at 810.

by successfully completing all of the requirements in her service plan and, to the extent the record raises any issue relevant to her present fitness to be a managing conservator, the evidence "amounts to no more than mere speculation" of harm.

To support a finding of significant impairment, the evidence must do more than merely raise a suspicion or speculation of possible harm.[7] *In re B.B.M.*, 291 S.W.3d 463, 467 (Tex. App.—Dallas 2009, pet. denied). Instead, the evidence must support the logical inference that some specific, identifiable behavior or conduct of the parent, demonstrated by specific acts or omissions, will probably cause serious harm. *In re Crumbley*, 404 S.W.3d 156, 161 (Tex. App.—Texarkana 2013, orig. proceeding); *In re B.B.M.*, 291 S.W.3d at 467; *Taylor v. Taylor*, 254 S.W.3d 527, 536 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *see also In re S.T.*, No. 02-15-00203-CV, 2015 WL 9244913, at *8 (Tex. App.—Fort Worth Dec. 17, 2015, no pet.). This is a heavy burden that is

---

[7] D.A. and R.A. argue that the parental presumption under Section 153.131 of the Family Code does not apply in this case because Mother was, in fact, appointed as a joint managing conservator. In support of their argument, D.A. and R.A. rely on the Texas Supreme Court's decision in *Brook v. Brook*, 881 S.W.2d 297, 300 (Tex. 1994) (holding that heightened standard for nonparent conservatorship appointment does not apply when nonparent seeks joint managing conservatorship with parent). However, the Court in *Brook* interpreted a statutory provision regarding the appointment of managing conservators that has since been repealed. *See* Act of May 14, 1991, 72d Leg., R.S., ch. 161, § 2, 1991 Tex. Gen. Laws 771, *repealed by* Act of Apr. 6, 1995, 74th Leg., R.S., ch. 20. § 2, 1995 Tex. Gen. Laws 282 (former Tex. Fam. Code § 14.01); *Brook*, 881 S.W.2d at 299 (analyzing former Tex. Fam. Code § 14.01). Unlike the statute at issue in *Brook*, Section 153.131 clearly establishes a presumption favoring the appointment of the parent as sole managing conservator (or when applicable, the parents as joint managing conservators) that must be rebutted by any nonparent seeking managing conservatorship appointment at the exclusion of or in addition to the parent or parents. *Critz v. Critz*, 297 S.W.3d 464, 472 & n.23 (Tex. App.—Fort Worth 2009, no pet.); *see also Compton v. Pfannenstiel*, 428 S.W.3d 881, 887(Tex. App.—Houston [1st Dist.] 2014, no pet.) (explaining that section 153.131 reflects principle that "in ordinary case, parents should be free from legal interference in the parent-child relationship"). *Compare* Tex. Fam. Code § 153.131, *with* former Tex. Fam. Code § 14.01.

9

not satisfied by merely showing the nonparent would be a better choice as custodian of the child. *Lewelling*, 796 S.W.2d at 167. When a parent and a nonparent are both seeking managing conservatorship, "close calls" should be decided in favor of the parent. *Id.* at 168. Acts or omissions that constitute significant impairment include, but are not limited to, physical abuse, severe neglect, abandonment, drug or alcohol abuse, or immoral behavior by the parent. *In re B.B.M.*, 291 S.W.3d at 469 (citing *In re De La Pena*, 999 S.W.2d 521, 528 (Tex. App.—El Paso 1999, no pet.)). A factfinder may infer the present fitness of the parent to be managing conservator from the parent's recent, deliberate past misconduct. *See In re M.W.*, 959 S.W.2d 661, 666 (Tex. App.—Tyler 1997, no writ). However, evidence of past misconduct, standing alone, may not be sufficient to show present unfitness. *Chavez v. Chavez*, 148 S.W.3d 449, 458 (Tex. App.—El Paso 2004, no pet.) (citing *M.W.*, 959 S.W.2d at 666)*; see Taylor*, 254 S.W.3d at 536.

D.A. and R.A. rely on various portions of the record that, they contend, support the trial court's implied finding that appointment of Mother as sole managing conservator would significantly impair R.E.G.'s physical health or emotional development. First, D.A. and R.A. point to evidence concerning Mother's actions in connection with the incident that led to R.E.G.'s removal. Specifically, D.A. and R.A. rely on the following exchange that took place between Zapata, a supervisor for the Department, and counsel for D.A. and R.A. concerning the Department's removal of R.E.G.:

> Zapata: The child went to the emergency room here in Eldorado for a clavicle injury. The parents, at that point, both [Mother] and [Father], said that it was due to the child falling off the bed.
>
> Attorney: Was that during a diaper change?

Zapata:      Yes.

Attorney:    The clavicle was found to be a spiral fracture, and the humerus bone was a complete break; is that correct?

Zapata:      Correct.

Attorney:    And that version, the doctor said that the version of events that were given by the parents was not consistent with the actual injuries; is that correct?

Zapata:      That is correct.

Attorney:    This was not a removal based upon drug use, was it?

Zapata:      No, it was not.

Attorney:    Was it based upon not feeding the child or not changing the child's diaper or anything of that nature?

Zapata:      No, it was not.

Attorney;    And, actually, the injury was not tended to immediately, is that also correct?

Zapata:      That is correct.

Attorney:    So it was more of a lack of recognition of proper care?

Zapata:      Yes.

D.A. and R.A. do not contend that this testimony, or any other evidence in the record, suggests that Mother was directly involved in causing R.E.G.'s injuries or that Mother was aware of how the injuries were caused and attempted to conceal that cause. Rather, the undisputed evidence shows that Father was the only person present when the injury occurred, he reported to Mother that R.E.G.'s injuries were caused by R.E.G.'s falling off the bed, Mother later realized that this

11

report about the cause of R.E.G.'s injury was untrue, and Mother and Father are now separated. Nevertheless, D.A. and R.A. contend that Zapata's testimony is sufficient to support the trial court's conservatorship decision because, according to D.A. and R.A., it suggests that Mother failed to recognize R.E.G.'s condition and to promptly seek medical care. We disagree.

At best, Zapata's testimony suggests that the Department initially removed R.E.G., in part, because the Department was concerned that Mother may have failed to timely seek "proper care" for R.E.G. However, the record fails to include any evidence of specific actions or omissions of Mother with respect to her alleged failure to recognize R.E.G.'s injuries or to seek proper medical care in September 2014, twenty months before the final hearing. *See Lewelling*, 796 S.W.2d at 167 (explaining that nonparent must offer evidence of "specific actions or omissions"). For example, there was no evidence presented at the final hearing demonstrating what Mother knew about R.E.G.'s injuries and when; what outward symptoms R.E.G. was exhibiting and when; what actions Mother took, if any; and what she should have done differently. As a result, Zapata's conclusory testimony that R.E.G.'s "injury was not tended to immediately" fails to provide any basis from which a factfinder could determine whether Mother, in fact, failed to promptly seek care for R.E.G. and, even if so, whether significant harm will likely occur in the future if Mother were appointed sole managing conservator. *Taylor*, 254 S.W.3d at 536. ("In and of itself . . . evidence of past misconduct may not be sufficient to show present unfitness."). As a result, this evidence is legally insufficient to rebut the parental presumption.

Second, D.A. and R.A. point to evidence that, they contend, shows that Mother engaged in "immoral behavior." D.A. and R.A. rely on testimony from Zapata acknowledging that

12

a criminal trespass warning had been issued against Mother at the request of a local high school principal. Zapata testified that the Department was informed by school officials that the warning was issued after students reported to the school counselor that they had seen Mother kissing a fifteen-year-old student on campus. According to Zapata, the Department investigated the claim and was told that the student was a family friend whom Mother was helping through a difficult family situation. Mother denied the allegations, no one from the Department ever spoke with the fifteen-year-old student, and the school did not provide the Department with any information other than the fact that "other students had reported" the incident. Nevertheless, based on the report, the Department required Mother to participate in three additional counseling sessions, which she did. According to Zapata, the psychologist reported that he "didn't feel like there was any concern or any more material to cover with her." D.A. and R.A. do not explain, and we fail to see, how this evidence—an unsubstantiated report of conduct unrelated to Mother's care of R.E.G.—supports a logical inference that some specific, identifiable conduct by Mother will probably cause significant harm to R.E.G. At most, this evidence "merely raise[s] a suspicion or speculation of possible harm" and is legally insufficient to demonstrate that significant harm will probably result if Mother is appointed sole managing conservator. *See In re B.B.M.*, 291 S.W.3d at 467.

Next, D.A. and R.A. argue that the record contains evidence of actions by Mother that allegedly demonstrate "questionable judgment and a lack of care." Specifically, D.A. and R.A. argue that the evidence shows that Mother "did not treat [a severe diaper rash] after the first day of a multi-day visit by [R.E.G.] in her home"; on one occasion, allowed "dirt and filth" to build-up around the child's lower torso; and on a separate occasion, returned the child to D.A. and R.A.

13

dressed inappropriately for the cold weather. D.A. and R.A. also point to a photograph that Mother took that, according to D.A. and R.A., shows R.E.G. reaching for an electrical outlet cover. We conclude that these isolated incidences of past conduct, occurring over a twenty-month period, fail to rise above mere speculation of harm and, consequently, are legally insufficient to support the trial court's implied finding of significant impairment. *See Whitworth*, 222 S.W.3d at 623 (explaining that it is "wholly inadequate to simply present evidence that a non-parent would be a better choice as custodian of the child," citing *Lewelling*, 796 S.W.2d at 167).

Finally, D.A. and R.A. point to evidence that they contend shows that Mother lacks employment and a "steady source of income." D.A. and R.A. assert that evidence presented at the final hearing shows that Mother was working very few hours when the case began, was unemployed for almost eight months, and often has relied on the assistance of others. Standing alone, the fact that a parent is unemployed, even at the time of the final hearing, is no evidence of significant impairment to the child. *See Lewelling*, 796 S.W.2d at 167 (concluding that fact that parent "was unemployed at the time of the custody hearing and living in somewhat crowded conditions" was no evidence of significant impairment). The undisputed evidence presented at the final hearing established that Mother had been working full time for at least the last four months. She also was maintaining a two-bedroom apartment, saving money, and providing for the basic needs of R.E.G. There is no evidence that Mother's past employment history had significantly impaired R.E.G.'s physical health or emotional development, or would in the future.

At the final hearing, Department representatives testified that the Department was satisfied that Mother had sufficiently demonstrated that she could provide a safe and adequate home

14

for R.E.G. To succeed on their request for managing conservatorship, D.A. and R.A. were required to rebut the presumption that Mother should be appointed sole managing conservator by presenting a preponderance of credible evidence that Mother engaged in specific, identifiable behavior demonstrating that naming her as managing conservator would significantly impair R.E.G.'s physical health or emotional development. *See Lewelling*, 796 S.W.2d at 167. D.A. and R.A. failed to meet this burden of proof. After considering the evidence in the light most favorable to the judgment, we conclude that there is no evidence of specific acts or omissions from which the court could have logically inferred that Mother is presently unfit to be a managing conservator and, consequently, that appointing her sole managing conservator is not in R.E.G.'s best interest. *See* Tex. Fam. Code § 153.131. The trial court abused its discretion in failing to award sole managing conservatorship to Mother, and we sustain Mother's sole issue on appeal.

## CONCLUSION

The order of the trial court is reversed, and the cause is remanded for further proceedings to determine the rights between the parties.

_____

Scott K. Field, Justice

Before Chief Justice Rose, Justices Field and Bourland

Reversed and Remanded

Filed: March 2, 2017

15