# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-18-00362-CV

---

**Elizabeth Hernandez, Appellant**

**v.**

**Leonardo Moya II, Appellee**

---

### FROM THE 207TH DISTRICT COURT OF COMAL COUNTY
### NO. C2009-0090B, THE HONORABLE RANDAL C. GRAY, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Elizabeth Hernandez appeals from the trial court's granting of discovery death-penalty sanctions striking her pleadings. She also challenges the trial court's denial of her motion for new trial after the granting of a default judgment. This appeal followed the trial court's default judgment in favor of Leonardo Moya II, the children's father, on his counter-petition to modify the parent-child relationship. For the following reasons, we reverse the trial court's order and remand this cause for a new trial.

## BACKGROUND

The parties were divorced by a 2011 agreed Decree of Divorce in which Hernandez and Moya were appointed joint managing conservators with their children's residence to be within Comal or Bexar counties. The Court awarded the father an expanded standard possession order and rendered child support and medical support orders. In March 2016, the Office of the Attorney General filed a "Notice of Change of Status and Motion for Further

Orders," with an Order Setting Hearing for May 20, 2016, and requested production from both parents. When the suit began, the parties' four children were ages 9, 12, 14, and 16. The Attorney General alleged that the mother had relinquished to the father primary care and possession of the middle two children for more than six months. The mother filed a general denial. The father filed a counter-petition alleging a relinquishment of the two middle children and preference of primary residence by two of the children over age 12. A Notice of Hearing accompanying the counter-petition set the case for August 26, 2016, for temporary orders. The father asked to be awarded the right to designate primary residence of the parties' three youngest children.

Each party served discovery; the county court at law signed an Agreed Order on Motion for Referral to County Court at Law; the parties signed Rule 11 agreements June 21, 2016, regarding discovery served on Moya and on August 26, 2016, regarding detailed temporary orders; and the trial court signed temporary orders November 4, 2016, granting Moya the exclusive right to designate the primary residence of the two middle children and Hernandez the exclusive right to designate the primary residence of the youngest and eldest. On February 10, 2017, the trial court appointed a local therapist to perform a child custody evaluation. On April 5, 2017, a second expert was substituted to do the report after the first therapist asked to be removed.[1]

In January 2017, Moya filed a motion to compel discovery and for sanctions, alleging that Hernandez had failed to respond to interrogatories, produce requested documents, and make requested disclosures. Moya's motion sought an order requiring Hernandez to produce

---

[1] The evaluation was completed on September 22, 2017 but does not appear to have been filed with the trial court. Hernandez attached a copy of the report to her motion for new trial. The forty-page report recommended that Hernandez have the right to designate the primary residence of the youngest child.

2

the requested documents and responses by February 28 and pay $1,200 in attorney's fees.  The court granted the motion and made the requested orders.  In March 2017, Hernandez's attorney provided some documents and discovery responses to Moya's attorney; some of the responses contained objections to the information requested.

In September 2017, Moya filed a second motion to compel discovery and for sanctions, alleging that Hernandez had failed to pay the ordered attorney's fees or timely provide the requested documents and responses and had asserted untimely objections and failed to remove them.  The motion requested that the court strike Hernandez's pleadings and grant judgment in favor of Moya.  The trial court rendered an order October 20, 2017 on the motion requiring Hernandez to produce responsive discovery and pay $750 in attorney's fees by October 27.

In January 2018, Moya filed a third motion to compel discovery and for sanctions. This motion alleged that Hernandez failed to provide the ordered discovery by October 27 and listed several outstanding discovery items (documents responsive to requests for production (RFPs) 3, 9, 11, and 13) and improper (i.e., "unremoved") objections to interrogatory (ROG) 14 and RFPs 9 and 13.[2]  The motion additionally contended that Moya "does not believe" all documents responsive to RFP 2[3] had been provided.  The motion contained a notice of hearing set for March 2, 2018 and again sought all "just and right" orders, including the striking of Hernandez's pleadings and judgment in favor of Moya.

---

[2] RFP 3 sought documents and recordings relating to conservatorship, possession and access, child support, the children's health insurance, and attorney's fees; RFP 9 sought the children's school records; RFP 11 sought Hernandez's Social Security statements since September 1, 2011; and RFP 13 sought "copies of [Hernandez's] scheduled work periods since September 1, 2011."  ROG 14 asked Hernandez to "identify and state the amount of each of your monthly living expenses in August 2011."

[3] RFP 2 sought any physical or electronic writings relating to conservatorship, possession and access, child support and the children's health insurance, and attorney's fees.

Hernandez's attorney, Tamer Morsi, filed a verified response to Moya's third motion to compel on February 28.  In it, Morsi averred that (a) Hernandez "previously withdrew all asserted objections" to Moya's discovery requests and "provided complete responses" to the ROGs on October 30, 2017, citing an attached email he sent to Moya's attorney; (b) Hernandez "does not have access to or possession of documentation responsive to" RFPs 2, 3, 11, and 13 and "has no information available to provide a response" to ROG 14; and (c) Moya's attorney did not confer with him prior to filing the third motion to compel as required by the rules of civil procedure.  Also February 28, Morsi filed a verified motion for continuance of the March 2 hearing on the third motion for sanctions, averring that he did not have child care available for his disabled son that date and he had attempted to reset the matter with Moya's attorney for March 7 but had not received a response.

The trial court conducted a hearing on Moya's third motion to compel March 2.  Neither Morsi nor Hernandez appeared.  After hearing argument from Moya's counsel representing that Morsi had not properly and timely responded to Moya's various discovery requests, the trial court admitted into evidence several documents pertaining to Morsi's discovery correspondence.  The trial court also agreed to "entertain" Moya's motion to strike Hernandez's pleadings and to hear the testimony of Moya.  Moya testified about custody issues and the children's best interests but did not testify about discovery issues.  After Moya's testimony, the court indicated that it had a "logistical question" because "[w]e are basically doing a modification hearing right now."  The court inquired, "Are we going to make this an automatically appealable hearing because we are not setting the modification separately?"  Moya's attorney replied, "Yes."  The hearing transcript continues,

| | |
|---|---|
| Court: | So, what you are asking me to do, No. 1, I previously and officially denied the Motion for Continuance. That's why we could have the hearing. On the Motion to Quash, you are basically asking for me to quash any of the responses he made? |
| Moya's Counsel: | I'm asking the Court to strike the pleadings of Ms. Hernandez and to grant judgment, which would essentially be a default judgment, which is why we needed the proof for the Court. |
| Court: | Exactly. But this is for the best interest of the children. So, it can't really be a default without having additional information. |
| Moya's Counsel: | Yes. |
| Court: | All right. So, the Motion to Compel, are we even going to have any kind of ruling on the Motion to Compel? |
| Moya's Counsel: | I think the Court could find the Motion to Compel facts are true based on the Motion to Compel [and] issue a sanction in the form of striking the pleadings. |

### Ruling of the Court

| | |
|---|---|
| Court: | All right. That will be the order of the Court. By striking the pleadings then we go automatically to the default situation where we can modify the terms and conditions of the custody and conservatorship of the minor children. |
| | I find it's in their best interest that [] Moya be appointed Managing Conservator with the right to determine the residency of the three minor children. |

After the hearing, the trial court rendered the Order in Suit to Modify Parent-Child Relationship (Order) at issue in this appeal, in which the trial court summarized its ruling on Moya's motion for sanctions: "Respondent, Elizabeth Hernandez, failed to appear[] and having failed to comply with the Orders of the Court, had her pleadings stricken and judg[]ment entered." The Order

granted Moya the exclusive right to designate the primary residence of the minor children and ordered Hernandez to pay Moya monthly child support.

Upon receiving a copy of the Order,[4] Hernandez hired a new attorney to represent her, who timely filed a "Motion to Set Aside Default Judgment" and motion for new trial on Hernandez's behalf. The trial court did not rule on the motion to set aside but denied the motion for new trial after a non-evidentiary hearing.

## DISCUSSION

In two issues, Hernandez contends that the trial court abused its discretion in imposing death-penalty discovery sanctions striking her pleadings, which resulted in what was effectively a default judgment on Moya's petition to modify, and in denying Hernandez's motion for new trial. We review the propriety of the trial court's striking Hernandez's pleadings first, as we find the determination of that issue dispositive of this appeal.

We review a trial court's imposition of sanctions for an abuse of discretion. *American Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006) (per curiam) (citing *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004)). We make that determination based on our independent review of the entire record. *Id.* "The legitimate purposes of discovery sanctions are threefold: 1) to secure compliance with discovery rules; 2) to deter other litigants from similar misconduct; and 3) to punish violators." *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex. 1992). However, discovery sanctions must also be "just." Tex. R. Civ. P. 215.2(b);

---

[4] In her verified motion for new trial, Hernandez averred that she did not receive a copy of the "default judgment rendered against her" until March 5, 2018, when "she received a call from her child's school" because Moya had called to withdraw the child's enrollment. Moya had testified at the hearing that he would not withdraw the child but would "let him finish the year" in his then-current elementary school.

*Blackmon*, 841 S.W.2d at 849; *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991) (orig. proceeding).

The Texas Supreme Court has established a two-prong test to determine whether a sanction is just. *See TransAmerican*, 811 S.W.2d at 917; *see also American Flood*, 192 S.W.3d at 583 (explaining *TransAmerican* two-part test). First, a direct relationship must exist between the offensive conduct and the sanction imposed. *American Flood*, 192 S.W.3d at 583. "This means that a just sanction must be directed against the abuse and toward remedying the prejudice caused the innocent party. It also means that the sanction should be visited upon the offender." *TransAmerican*, 811 S.W.2d at 917. "The trial court must at least attempt to determine whether the offensive conduct is attributable to counsel only, or to the party only, or to both." *Id.* Second, sanctions must not be excessive; in other words, the punishment should fit the crime. *Id.* A sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes. *Cire*, 134 S.W.3d at 839; *TransAmerican*, 811 S.W.2d at 917. Additionally, the record must reflect that the trial court considered the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance. *GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 729 (Tex. 1993). The trial court does not need to test the effectiveness of all available lesser sanctions by actually imposing them before issuing the death penalty but must "analyze the available sanctions and offer a reasoned explanation as to the appropriateness of the sanction imposed." *Cire*, 134 S.W.3d at 840.

"[C]ase-determinative sanctions may only be imposed in 'exceptional cases' where they are 'clearly justified' and it is 'fully apparent that no lesser sanctions would promote compliance with the rules.'" *Id.* (quoting *GTE*, 856 S.W.2d at 729–30). Sanctions that are so severe as to preclude presentation of the merits of a party's case, i.e., death-penalty sanctions,

7

"should not be assessed absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules." *TransAmerican*, 811 S.W.2d at 918. Moreover, a death-penalty sanction should not be used unless the party's actions justify a presumption that the case lacks merit. *Id.* Additionally, "[i]n suits affecting the parent-child relationship, where the best interest of the child is paramount, striking the pleadings of a parent will rarely, if ever, be appropriate." *In re F.A.V.*, 284 S.W.3d 929, 931 (Tex. App.—Dallas 2009, no pet.) (citing *Taylor v. Taylor*, 254 S.W.3d 527, 534–35 (Tex. App.—Houston [1st Dist.] 2008, no pet.)). We note also that the Court had ordered an expert custody evaluation, which was not given weight with the granting of the discovery sanctions and which differed from the court's default orders.

Here, the record does not show that the trial court adhered to the first prong of the *TransAmerican* test, which requires a direct relationship among the conduct, the offender, and the sanction imposed, *see id.* at 917, because it is not clear whether Hernandez or her attorney was responsible for the alleged incomplete discovery responses and non-produced documents. To the contrary, the record implies that it was Hernandez's attorney, Morsi, who did not properly and timely respond to discovery requests. For instance, after Moya's attorney identified for Morsi via email which particular document requests and interrogatories were still outstanding, Morsi responded by merely forwarding a prior email he had sent containing attachments responsive to different requests but not the outstanding ones. Whether Morsi's response was the result of inadvertence or "callous disregard," we cannot tell from this record. In any event, it was improper for the trial court to impute the discovery non-responsiveness to Hernandez without proof in the record to support such implication or without inquiring into whether Hernandez herself was responsible for the non-responsiveness. On this record, we cannot tell that the sanctions were visited on the actual offender. *See Spohn Hosp. v. Mayer*, 104 S.W.3d 878,

8

882 (Tex. 2003) (per curiam) (holding that trial court did not properly apply first prong of *TransAmerican* test where there was no evidence of whether client or counsel was responsible for discovery abuse and noting that neither trial court nor court of appeals discussed whether counsel or client was responsible); *TransAmerican*, 811 S.W.2d at 918, 920 (granting mandamus compelling trial court to set aside order issuing death-penalty sanction where it was not clear whether party, counsel, or both should be faulted for party's failure to attend deposition); *Hernandez v. Polley*, No. 03-15-00384-CV, 2016 WL 6068259, at *4 (Tex. App.—Austin Oct. 13, 2016, no pet.) (mem. op.) (concluding that trial court failed to apply properly first prong of *TransAmerican* test by "failing to even attempt to ascertain whether [party] or her attorney was the offending party prior to dismissing the case"); *cf. Young v. Young*, No. 03-14-00720-CV, 2016 WL 7339117, at *6 (Tex. App.—Austin Dec. 15, 2016, no pet.) (mem. op.) (upholding death-penalty sanction in modification proceedings where record showed nexus between offender, misconduct, and sanction where parent repeatedly failed to schedule and attend custody-evaluation appointments or pay for custody evaluation).

We also conclude that the trial court failed to adhere to the second prong of the *TransAmerican* test, which requires that the sanction not be excessive. *TransAmerican*, 811 S.W.2d at 917; *Hernandez*, 2016 WL 6068259, at *4. The primary consideration in a trial court's decision to modify a child-custody decree or order is whether modification is in the best interest of the child. *See* Tex. Fam. Code § 156.101(a). Given this mandate, it would only be under the most unusual set of facts that the striking of a party's pleadings would not be excessive, given that the effect of such act renders what is essentially a default judgment without granting a full opportunity for that party to present evidence on the merits, such as the court-ordered evaluation report. *See In re Hood*, 113 S.W.3d 525, 529 (Tex. App.—Houston [1st Dist.] 2003, orig.

proceeding) (holding that trial court abused discretion in striking father's pleadings because case was therefore decided without court reaching merits of father's claims, yet "district court's primary responsibility in a modification proceeding is to consider the best interest of a child, not to punish an offending party").

While the record reflects that Morsi provided untimely and incomplete or improper discovery responses more than once, it also shows that as the case progressed Morsi provided several missing discovery items and responses and withdrew all of his discovery objections. Morsi's verified response to Moya's third motion to compel indicates that as of the final hearing the only outstanding discovery appears to have been documents responsive to RFP 9 (the children's school records).[5] Considering the apparent amount of outstanding discovery, the record does not reflect that the trial court considered lesser sanctions to remedy the amount of outstanding discovery, such as imposing another monetary sanction or holding Morsi or Hernandez in contempt, or that the trial court issued Hernandez a warning that her pleadings would be struck for further failures to comply with discovery requests. The trial court also could have granted the continuance and reset the matter for a response from Morsi and Hernandez as to how and why discovery was not complete.

In addition, the trial court's order contained no reasoned explanation as to why the death-penalty sanction was appropriate. *See Cire*, 134 S.W.3d at 840; *Hernandez*, 2016 WL 6068259, at *7. The only indication in the record of the trial court's basis for issuing the

---

[5] Morsi's response averred that Hernandez did not have access to or possession of documents responsive to RFPs 2, 3, 11, and 13, which Moya's third motion to compel had contended were outstanding. Morsi also averred that Hernandez had no information available to provide a response to outstanding ROG 14 (asking her to identify the amount of her monthly living expenses in August 2011).

sanction is that the trial court did not grant Morsi's continuance and neither Morsi nor Hernandez (who verified in her motion for new trial that she had no notice of the hearing) appeared at the hearing to oppose the sanction. To show that the trial court considered less stringent sanctions, "the record should contain some explanation of the appropriateness of the sanctions imposed." *Spohn Hosp.*, 104 S.W.3d at 883. The record here does not.

Finally, given that the record does not show that the conduct of Hernandez or her counsel rises to the level of bad faith or callous disregard for the discovery rules and that this is a custody case focused on the children's best interest, we likewise conclude that their discovery conduct does not justify a presumption that Hernandez's pleadings lack merit. *See TransAmerican*, 811 S.W.2d at 918. In the first place, it may have been a mere oversight that Moya's response to the third motion to compel did not specifically mention whether Hernandez had access to any documents responsive to RFP 9. Secondly, the documents responsive to RFP 9 (the children's school records) are the type that Moya could likely obtain from third parties himself. Finally, the child custody evaluation—which Hernandez attached to her motion for new trial—recommended that the youngest child remain with Hernandez and that Moya have a standard possession schedule, which supports Hernandez's pleadings requesting that Moya's modification petition be denied; it is also contrary to what the trial court ordered. Discovery sanctions may not be used to adjudicate the merits of a party's claims or defenses unless a party's hindrance of the discovery process justifies a presumption that her claims or defenses have no merit. *See id.* The record here does not support such a presumption.

For all of the above reasons, we sustain Hernandez's second issue. Because our resolution of her second issue is dispositive, we need not reach her first issue, in which she argues that the trial court erred in denying her motion for new trial. *See* Tex. R. App. P. 47.1.

11

## CONCLUSION

The trial court abused its discretion in striking Hernandez's pleadings as a discovery sanction and granting a default judgment in favor of Moya on his petition to modify the parent-child relationship. Accordingly, we reverse the trial court's Order and remand this cause for a new trial.

_____

Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Triana

Reversed and Remanded

Filed: August 29, 2019